Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

AUSTIN BEAULIER, individually and on behalf of all those similarly situated,

Plaintiff,

v.

MICROSOFT CORPORATION,

Defendant.

Case No. 2:26-cv-01031-JNW

**MICROSOFT CORPORATION'S MOTION TO DISMISS**

Noted for Hearing: August 3, 2026

*ORAL ARGUMENT REQUESTED*

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     FACTUAL BACKGROUND ............................................................................................2

        A.      Microsoft's TRELLIS Is A Transformative Tool That Helps Users
                Create New 3D Models ..........................................................................................2

        B.      Microsoft Trains TRELLIS On Publicly Available 3D Models
                And Develops A Dataset Called TRELLIS-500K. .................................................3

        C.      Beaulier Makes 3D Models Publicly Available Under Open-
                Source Licenses. ....................................................................................................4

        D.      Beaulier Sues Microsoft Under The DMCA. .........................................................5

III.    LEGAL STANDARDS ......................................................................................................6

IV.     ARGUMENT .....................................................................................................................6

        A.      The Complaint Does Not Plausibly Allege That Microsoft—Or
                Anyone Else—Removed CMI From Copies of Works
                (Counts I and II). ...................................................................................................6

        B.      The Complaint Fails To Plausibly Allege That Microsoft Distributed
                Copies Of Works With CMI Removed (Count II). ................................................10

        C.      The Complaint Fails To Plausibly Allege § 1202's "Double-Scienter"
                Requirement. ........................................................................................................10

V.      CONCLUSION ................................................................................................................13

MICROSOFT CORP.'S MOTION TO DISMISS                 *i*
No. 2:26-cv-01031-JNW

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
No. 12-cv-02215, 2012 WL 12921035 (C.D. Cal. Aug. 8, 2012)............................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................6, 9, 10

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013)...............................................................................................9

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
No. 22-cv-1463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022)............................................7

*Fischer v. Forrest*,
286 F. Supp. 3d 590 (S.D.N.Y. 2018) ....................................................................................7

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
No. 13-cv-00496, 2015 WL 263556 (D. Haw. Jan. 21, 2015) .................................................7

*Harrington v. Pinterest, Inc.*,
No. 20-cv-05290, 2021 WL 4033031 (N.D. Cal. Sept. 3, 2021) ...........................................13

*Harrington v. Pinterest, Inc.*,
No. 20-cv-05290, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ..........................................13

*Howarth v. Carsanaro Landscaping, Inc.*,
No. 22-cv-10998, 2023 WL 5978298 (D. Mass. July 21, 2023)............................................10

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999)....................................................................................7

*Mango v. BuzzFeed, Inc.*,
970 F.3d 167 (2d Cir. 2020).................................................................................................11

*Mills v. Netflix, Inc.*,
No. 19-cv-07618, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020)...............................................13

*Philpot v. Alternet Media, Inc.*,
No. 18-cv-04479, 2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) .........................................13

*Raw Story Media, Inc. v. OpenAI, Inc.*,
756 F. Supp. 3d 1 (S.D.N.Y. 2024).......................................................................................10

*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018).................................................................................2, 9, 12, 13

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

*ii*

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

*The Intercept Media, Inc. v. OpenAI, Inc.*,
767 F. Supp. 3d 18 (S.D.N.Y. 2025) ......................................................................................8

*Tremblay v. OpenAI, Inc.*,
Nos. 23-cv-03223 and 23-cv-03416, 716 F. Supp. 3d 772 (N.D. Cal. 2024) ........................13

**Statutes**

17 U.S.C. § 1202(b) ................................................................................................ *passim*

17 U.S.C. § 1202(b)(1) ........................................................................................... *passim*

17 U.S.C. § 1202(b)(3) ........................................................................................... *passim*

17 U.S.C. § 1202(c) .................................................................................................... 6, 7

Digital Millennium Copyright Act § 1202 (DMCA) ............................................... *passim*

**Other Authorities**

Merriam-Webster's Dictionary, https://www.merriam-
webster.com/dictionary/distribute ...................................................................................10

Webster's Third New International Dictionary 1921 (1993) ............................................7

U.S. Copyright Office, Digital Millennium Copyright Act of 1998 (Dec. 1998),
https://www.copyright.gov/legislation/dmca.pdf ............................................................7

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

*iii*

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

## I.    INTRODUCTION

Plaintiff Austin Beaulier is a creator of 3D models—i.e., digital representations of objects in space—who alleges that Microsoft has used his content to train an artificial intelligence tool capable of generating new 3D models in response to user prompts.  In this broad respect, he joins many plaintiffs across the country challenging the training and deployment of generative AI technology.  And indeed, he has filed nearly identical complaints against several other companies alleging they too used 3D models for purposes of generative AI training.  But Beaulier's one-size-fits-all Complaint is defective in multiple ways and fails to state a claim against Microsoft.

It helps to clarify at the outset what Beaulier does *not* allege:  He invokes the Constitution's "Copyright Clause" and his "copyrighted works," Compl. ¶¶ 9, 20, but brings no claim for copyright infringement.  He alleges that his works are "Creative Commons-licensed" and that Microsoft is not "complying with license conditions," Compl. ¶ 6, but brings no claim for breach of contract.  Instead, the only support for a class action seeking mass statutory damages are claims under § 1202 of the Digital Millennium Copyright Act (DMCA), a statute that protects the "Integrity of Copyright Management Information," or "CMI."  Beaulier alleges generally that 3D models are typically made publicly available on various websites along with things like author information or licensing requirements; that Microsoft "removed, altered, or failed to preserve" this information when it acquired publicly available 3D models and trained AI tools on them, Compl. ¶ 161; and that Microsoft distributed works without CMI, Compl. ¶ 162.  But his allegations are riddled with holes and plagued by implausible assumptions.  He does not identify any specific work nor allege anything about that work; he does not describe the location of any CMI nor does he explain by what process that CMI was removed.  Finally, he fails to suggest anyone to whom the copies were distributed.  These basic failings doom the Complaint.

*First*, the Complaint fails to plausibly allege that Microsoft—or anyone else—engaged in an act of *removal* of CMI, as the text of both § 1202(b)(1) and (b)(3) require.  Instead, Beaulier attempts to plead a claim based on "removal *or failure to preserve*" CMI—the latter of which is simply not actionable conduct. Section 1202(b) is an anti-piracy statute designed to prevent the act of tampering with CMI; it is not an all-purpose attribution statute that requires the inclusion or

MICROSOFT CORP.'S MOTION TO DISMISS          1
No. 2:26-cv-01031-JNW

preservation of information.  If a defendant can obtain and use a copy of a work without an act of removing CMI, there is no CMI removal claim.  The Complaint fails to plead the required affirmative act of removal, so both the § 1202(b)(1) and (b)(3) claims fail.  *Infra* § IV.A.

*Second*, for his claim under § 1202(b)(3), the Complaint fails to plausibly allege an act of "distribution" of works with CMI removed.  Here again, Beaulier tries to fudge the "distribution" requirement by alleging that the statute "prohibits … distributing, importing for distribution, *or otherwise using* copyrighted works" knowing CMI has been removed.  Compl. ¶ 157 (emphasis added).  He adds "otherwise using" because he does not and cannot plead any transfer of copies of 3D models by Microsoft.  But nothing in the statutory text supports a claim for "otherwise using" a work, so the claim fails.  *Infra* § IV.B.

*Third*, for both claims, the Complaint fails to satisfy § 1202(b)'s "double-scienter" requirement.  Under that requirement, any removal or distribution must (a) be intentional; and (b) be done with knowledge or reason to know that it will facilitate or conceal copyright infringement.  At most, the Complaint alleges incidental non-inclusion of CMI in the process of generative AI training, not purposive tampering with CMI.  And independently, the Complaint fails to allege an objective likelihood that CMI removal in this context will result in future infringement—as required by the Ninth Circuit's decision in *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675-76 (9th Cir. 2018).  *Infra* § IV.C.

The Complaint should be dismissed.

## II.      FACTUAL BACKGROUND

### A.      Microsoft's TRELLIS Is A Transformative Tool That Helps Users Create New 3D Models.

The past decade has seen extraordinary advances in the fields of machine learning and artificial intelligence.  Perhaps most prominent has been the emergence of "generative AI" technology—technology capable of learning and encoding patterns across a vast dataset and then generating new outputs based on user prompts.  Microsoft has been at the vanguard of these developments, "conduct[ing] substantial research and development involving generative artificial intelligence systems."  Compl. ¶ 31.  One of those research efforts is its TRELLIS project, which

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

2

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

involves the development of a "generative AI system[] capable of producing new 3D" models, Compl. ¶¶ 83, 105.[1]

3D design stands at the intersection of geometry, optics, material science, and visual art.  It is essentially the process of turning real-world objects into digital ones.  Imagine holding an object in your hand, then draping it with a net made of tiny shapes, usually triangles or squares. A 3D designer then builds that net on a computer by stitching together each of those triangles or squares so that the object on the screen is shaped just like the object in real life.  After that, they cover the surfaces with digital colors and textures so that the 3D object looks like the real thing from every angle.  When done right, the 3D model looks, behaves, and interacts with light just as the object would in real life.

Before generative AI, creating new 3D models was painstaking work.  But using TRELLIS (and tools like it), users can produce new 3D "objects, environments, and digital assets" by prompting TRELLIS to generate them, rather than having to build models polygon by polygon. Compl. ¶¶ 83, 105.  Microsoft introduced TRELLIS in 2024 and a second iteration, TRELLIS.2, in 2025. Compl. ¶ 108.

**B.      Microsoft Trains TRELLIS On Publicly Available 3D Models And Develops A Dataset Called TRELLIS-500K.**

According to the Complaint, Microsoft "trained" its TRELLIS tool on hundreds of thousands of 3D models.  Compl. ¶ 96, 99, 109.  The purpose of generative AI training is to allow the tool to "learn patterns from the training data."  Compl. ¶ 99.  With a sufficiently large "training set," the resulting AI tool becomes "capable of automatically producing new 3D objects" based on the patterns it has learned.  Compl. ¶ 82.  The Complaint alleges that training requires obtaining 3D models, then "convert[ing] [these] raw 3D assets into training inputs suitable for generative AI systems" by "transform[ing]" "the geometry and textures of a 3D model into data structures suitable for machine-learning training."  Compl. ¶¶ 44, 87, 95-98, 149, 161.

---

[1] *See generally TRELLIS.2: Native and Compact Structured Latents for 3D Generation*, Microsoft, https://microsoft.github.io/TRELLIS.2/ (last visited June 5, 2026) ("TRELLIS.2 is purely a research project").

MICROSOFT CORP.'S MOTION TO DISMISS        3
No. 2:26-cv-01031-JNW

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

3D models are plentiful across the internet. In the spirit of "collaborative creativity and open innovation," an online ecosystem has emerged in which designers facilitate 3D design by "creat[ing] and shar[ing] digital 3D models" on various platforms, which can then be used across "numerous industries and creative fields" using "open licensing." Compl. ¶¶ 32-38. Millions of designs exist on these platforms. *E.g.*, Compl. ¶ 50. In that same spirit of innovation, technology companies like Microsoft have identified and used publicly available 3D models from these platforms to develop AI technology. As the Complaint explains, "researchers and technology companies have assembled large-scale datasets of 3D models in order to train artificial intelligence systems." Compl. ¶ 74.

One such dataset is "Objaverse-XL," an "academic dataset composed of more than 10 million 3D assets collected from publicly accessible repositories." Compl. ¶ 76. It "aggregates" data from "numerous online platforms." Compl. ¶ 77. Objaverse-XL does not itself contain 3D models—it is an "index" with "links to the original source files." Compl. ¶ 8; *see also* Compl. ¶ 93. According to the Complaint, Microsoft "trained its generative 3D systems using assets drawn from Objaverse-XL," Compl. ¶ 90, which it obtained from the online platforms hosting them, Compl. ¶ 143. In 2024, when it released its TRELLIS project, Microsoft also released its curated dataset of 3D assets called TRELLIS-500K. Compl. ¶ 108. That curated dataset consisted of approximately "500,000 high-quality 3D assets" "derived substantially from Objaverse-XL," and "collected from publicly accessible repositories containing user-generated 3D models." Compl. ¶¶ 13, 76, 109-110.

**C.     Beaulier Makes 3D Models Publicly Available Under Open-Source Licenses.**

Beaulier is a professional 3D artist and visual-effects creator. Compl. ¶ 23. He specializes in creating digital 3D models and photogrammetry scans—a technique that involves photographing real-world objects from many angles and using software to reconstruct a 3D asset from those photographs. Compl. ¶¶ 24, 114 n.1. Over the years, Beaulier has uploaded his works onto online platforms. Compl. ¶¶ 26, 115-116.

During some unspecified timeframe, Beaulier alleges, he uploaded "more than four hundred" of his designs onto an online platform called Sketchfab. Compl. ¶ 116. When he did so,

MICROSOFT CORP.'S MOTION TO DISMISS     4
No. 2:26-cv-01031-JNW

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

he made them available for free download under a Creative Commons license called CC-BY. Compl. ¶ 116. CC-BY is an attribution-based license, which permits any reuse of the model, including commercial, provided the user gives proper credit. Compl. ¶¶ 40, 116. In February 2023, Sketchfab introduced a "NoAI" tag—an HTML instruction embedded in a model's Sketchfab page that creators can use to "designate that their models may not be used for generative AI data collection, dataset creation, or AI model training." Compl. ¶¶ 53-54. Beaulier applied the tag to each of his works on the platform. Compl. ¶ 123. Soon after, Beaulier discovered that "numerous," but unspecified, works were "referenced within" the Objaverse index. Compl. ¶¶ 123-124.

### D.      Beaulier Sues Microsoft Under The DMCA.

In March 2026, Beaulier brought this putative class action. The first cause of action alleges violation of § 1202(b)(1) of the DMCA, which protects against the "removal" of CMI from copies of works. Compl. at 23-25. The Complaint's theory is that Microsoft "remove[d] or fail[ed] to preserve" CMI at some point in the process of training TRELLIS. Compl. ¶ 1. It alleges that Microsoft "did not attempt to satisfy" certain licensing conditions Beaulier attached to his works, ¶¶ 47-48, "disregarded the NoAI tag," Compl. ¶ 61, and did not "preserv[e] the identity of the creators or the licensing information associated with each work." Compl. ¶¶ 45, 112. Precisely how this removal occurs the Complaint does not say. It asserts that once Microsoft has obtained 3D models, it puts the models through a "preprocessing pipeline" used to prepare 3D assets for training, which involves "format conversion, mesh normalization, rendering, voxelization, and other transformations." Compl. ¶¶ 95, 98; *see also* Compl. ¶¶ 96-103. But it does not allege that any CMI accompanies copies of 3D models at the start of this purported pipeline.

The second cause of action alleges violation of § 1202(b)(3), which protects against "distribution" of works "knowing" that CMI was removed. The Complaint alleges that Microsoft "used datasets derived" from certain repositories containing Beaulier's works and that CMI was "removed, altered, or failed to be preserved" from the works while they were prepared "for use in AI training pipelines." Compl. ¶¶ 160-161. According to the Complaint, Microsoft then "distributed" the "CMI-stripped representations" of his works. Compl. ¶ 162. Beaulier alleges that Microsoft knew or should have known that "the use" of those CMI-stripped works would "induce,

MICROSOFT CORP.'S MOTION TO DISMISS        5
No. 2:26-cv-01031-JNW

enable, facilitate, or conceal infringement." Compl. ¶ 164. The Complaint does not assert the transfer of any copy of a 3D model from Microsoft to someone else.

Beaulier seeks to represent a class of "[a]ll creators whose 3D models with CMI were published on Sketchfab, Thingiverse, Polycam, or other repositories and were incorporated into Objaverse-XL or derivative datasets used by Defendant to train its AI models." Compl. ¶ 130. The Complaint seeks various forms of relief, including statutory damages and injunctive relief. *See* Compl. at 26-27.

## III.    LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). If a claim lacks a cognizable theory, lacks sufficient facts to plausibly support that theory, or advances a theory that is foreclosed as a matter of law, dismissal is appropriate. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot state a claim. *Id.*

## IV.    ARGUMENT

The Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

**A.    The Complaint Does Not Plausibly Allege That Microsoft—Or Anyone Else—Removed CMI From Copies of Works (Counts I and II).**

Both of Beaulier's claims should be dismissed because Beaulier fails to allege that Microsoft (or anyone else) has engaged in any act of removal of CMI, as required for claims under § 1202(b)(1) and (b)(3).

**1.** Section 1202 is concerned with the "Integrity" of CMI, which is defined as "information" like "the title," "the author," "the copyright owner," or the "[t]erms and conditions for use of the work" that are "conveyed in connection with copies … of a work." 17 U.S.C. § 1202(c). Importantly, the statute does not command the *inclusion* of this information. It prohibits "*tampering* with [CMI]," U.S. Copyright Office, *Digital Millennium Copyright Act of 1998* (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf (emphasis added). It does so by specifying particular prohibited acts. For the claims at issue here, those acts are "intentionally remov[ing] …

MICROSOFT CORP.'S MOTION TO DISMISS                6
No. 2:26-cv-01031-JNW

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

CMI" from copies of works, 17 U.S.C. § 1202(b)(1), and "distributing" "copies of works … knowing that [CMI] has been removed," *id.* § 1202(b)(3).

An act of removal of CMI is thus an essential element of a claim. To "remove" something means "to move by lifting, pushing aside, or taking away or off" or "to get rid of." Webster's Third New International Dictionary 1921 (1993). To state a claim, a plaintiff must at a minimum plausibly allege facts that give rise to an inference that there was CMI in some location and that the defendant removed the CMI from that place. It is not enough to allege simply that the defendant somehow came into possession of a copy of a work that resembles an original but lacks CMI. After all, as noted above, CMI need not be attached to a copy of a work; it need only be "conveyed in connection with" the work. 17 U.S.C. § 1202(c). It is therefore entirely possible for a defendant to obtain a copy of a work, or something that resembles an original copy, without interacting with CMI in any way. Think, for example, of someone flipping to a page of a book or  transcribing a passage, but not reproducing the title or copyright page. This conduct is not a violation of § 1202(b) because no CMI has been removed from its location.

Courts have repeatedly rejected claims where a plaintiff fails to allege an act of removal. Several have emphasized that § 1202(b) "does not prohibit *merely omitting* CMI from an infringing work." *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-1463, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022) (emphasis added); *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, No. 12-cv-02215, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) ("omissions" of CMI not actionable). Similarly, they have rejected claims where a defendant creates some new or "derivative work" without transposing CMI, because that cannot establish that the defendant "removed [CMI] from [the] original work." *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-cv-00496, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017); *see also Fischer v. Forrest*, 286 F. Supp. 3d 590, 609 (S.D.N.Y. 2018) (CMI removal liability applies only when works are "substantially or entirely reproduced"); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *rev'd on other grounds*, 336 F.3d 811 (9th Cir. 2003) (no § 1202 liability where content from an original copy was incorporated into some different form or distinct work without CMI).

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

7

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

**2.** The Complaint does not allege that Microsoft or anyone else did—or would have had to—remove CMI from some location where it appeared.  Indeed, it largely avoids even alleging the location of any CMI or any interaction with CMI at all, making it impossible to conclude that CMI was removed from some location.  Nowhere does the Complaint specify where "creator" information or "licensing terms" appear relative to the 3D models allegedly obtained, nor explain why Microsoft or anyone else would have had to remove that information to train an AI tool on that data.

The one instance in which the Complaint *does* specify the location of CMI, moreover, shows why Beaulier cannot state a claim.  The Complaint alleges that the Sketchfab 3D model platform has a "NoAI" feature that creators can use to "designate that their models may not be used for generative AI data collection."  Compl. ¶ 53.  It explains that "[w]hen a creator applies the NoAI designation …, Sketchfab embeds a corresponding HTML meta tag *within the model's webpage*," Compl. ¶ 54 (emphasis added), which meta tag it claims is CMI.  This is a concession that the NoAI tag *is not* attached to or embedded in the 3D model itself, but placed on a Sketchfab model page that *also* hosts a 3D model.  The Complaint then goes on to allege that when Microsoft obtains 3D models, it uses an index like Objaverse-XL, which contains "references to the original source files."  Compl. ¶ 79.  Microsoft therefore obtains 3D models not from visiting a model webpage, but via direct links without ever needing to interact with the NoAI tag on the Sketchfab-hosted webpage.  Indeed, the Complaint does not even explain how Microsoft could possibly "remove" a NoAI HTML tag from a third-party website even if it wanted to.

Beaulier's Complaint stands in stark contrast to those courts have allowed to pass the pleading stage, where plaintiffs have alleged in detail where CMI was located and precisely how the defendant removed that CMI.  *E.g.*, *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18 (S.D.N.Y. 2025) (detailing location of CMI and method of removal; dismissing claims against Microsoft).

**3.** Unable to allege an act of removal of CMI, Beaulier tries several meritless workarounds.

*First*, Beaulier attempts to expand the § 1202(b) cause of action by alleging repeatedly that Microsoft "remov[ed] or *fail[ed] to preserve*" CMI.  Compl. ¶ 1; *see* Compl. ¶ 61, 87, 101, 107,

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

8

128, 137, 150, 161.  Section 1202(b), however, neither requires the preservation of CMI nor creates a cause of action for failure to do so.  Congress chose only to prohibit "remov[al]" and "alter[ation]" of CMI.  Beaulier's remove-or-fail-to-preserve formulation is an obvious tell that Beaulier cannot allege the conduct the statute requires.  Because his formulation contains two courses of conduct— one of which is lawful and one of which is prohibited—it necessarily fails to nudge the claims "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 683; *see In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.") (citation omitted).

*Second*, Beaulier strays even further from the text of § 1202(b) by attempting to predicate liability on Microsoft's alleged non-compliance with "usage restriction[s]" associated with Beaulier's works.  *E.g.*, Compl. ¶¶ 44, 59.  Although "terms and conditions" on a work's use can qualify as CMI, *Stevens*, 899 F.3d at 671, Beaulier does not allege any facts showing that any such conditions associated with his works were *removed*.  Instead, Beaulier alleges that those conditions were *violated. E.g.*, Compl. ¶¶ 55, 116, 120, 122-24 (describing various use restrictions he imposed on his works and their "disregard[]").  That is not actionable under § 1202(b).

Most prominently, he alleges that sometime in February 2023, he "manually applied" a recently released "NoAI tag to each of the more than four hundred models [he had] published" on Sketchfab, which barred the use of his Sketchfab works for AI-related purposes.  Compl. ¶ 123.  Shortly thereafter, he "discovered that his works were referenced within the Objaverse dataset," which is used for AI training.  Compl. ¶ 124.  That is not CMI removal.  It is at best a violation of a use restriction by whoever created the Objaverse dataset—and even that is a stretch, considering that the Complaint does not even establish that Beaulier applied the NoAI designation before the Objaverse dataset was created.

Courts have repeatedly rejected attempts to predicate CMI removal claims on non-compliance with terms and conditions.  *See Howarth v. Carsanaro Landscaping, Inc.*, No. 22-cv-10998, 2023 WL 5978298, at *3-4 (D. Mass. July 21, 2023), *report and recommendation adopted*,

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

9

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

No. 22-cv-10998, 2023 WL 5978233 (D. Mass. Aug. 7, 2023) (distinguishing between CMI removal and use restrictions and dismissing CMI claims); *see also Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 7 (S.D.N.Y. 2024), *reconsideration denied sub nom, In re OpenAI, Inc., Copyright Infringement Litig.*, No. 24-cv-01514, 2025 WL 1707564 (S.D.N.Y. June 18, 2025) (emphasizing that Congress enacted § 1202(b) to address CMI removal, not issues relating to licensing).

*Third*, the Complaint tries to skate by on vague and conclusory allegations. For example, Beaulier alleges "remov[al]" of the "NoAI" tag; elsewhere he alleges "alteration" of the NoAI tag; and in other places he references the "removal" of certain "attribution" information from his works. *E.g.*, Compl. ¶¶ 61-62, 87, 101. These naked assertions cannot be credited because they do not even bear basic details about where CMI was originally located and how and why it must have been removed. Beaulier does not allege any facts that raise the inference that anyone has ever removed the NoAI tag or any attribution information from his works or any allegation that his works have been distributed without CMI. Beaulier's mere assertions that certain CMI was removed thus do not get the assumption of truth. *Iqbal*, 556 U.S. at 678.

Because the Complaint does not allege removal of CMI, both the § 1202(b)(1) and (b)(3) claims should be dismissed.

**B.    The Complaint Fails To Plausibly Allege That Microsoft Distributed Copies Of Works With CMI Removed (Count II).**

Beaulier's claim under § 1202(b)(3) fails for the independent reason that the Complaint does not allege Microsoft distributed a copy of Beaulier's works. The statute explicitly requires that a defendant "distribute … copies of works … knowing that [CMI] has been removed or altered." 17 U.S.C. § 1202(b)(3). The most apt dictionary definition of "distribute" is to "give out or deliver" something to someone. Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/distribute. The plain meaning of the term thus requires the transfer of a copy of a work to someone else. The Complaint alleges no such thing. The closest it comes is the allegation that Microsoft released its curated dataset of 3D assets called TRELLIS-500K. Compl.

¶ 108. But the Complaint does not allege that the dataset includes 3D models *themselves*, as opposed to "references" (i.e., links) to those models.

Once again, the Complaint's attempt to elide this problem is an obvious tell. It asserts that "Section 1202(b)(3) prohibits any person from distributing, importing for distribution, *or otherwise using* copyrighted works," Compl. ¶ 157, then alleges that Microsoft "used" 3D models it found in the Objaverse-XL index, Compl. ¶ 162. But § 1202(b)(3) most certainly *does not* prohibit the "use" of copies of works; nothing in the statutory text remotely supports that reading of the statute. If Beaulier wishes to challenge use, he should bring a copyright infringement claim. His attempt to plead a distribution claim by pointing to "use" fails to state a claim. The § 1202(b)(3) claim should be dismissed.

**C.      The Complaint Fails To Plausibly Allege § 1202's "Double-Scienter" Requirement.**

Finally, both claims fail for the independent reason that the Complaint cannot satisfy § 1202(b)'s "double scienter" requirement. *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020). That requirement demands not only "intentional" CMI removal or "knowing" distribution, it also requires that any prohibited conduct was done "knowing" or "having reasonable grounds to know" those actions will "induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(b).

To begin with, the Complaint at best alleges that any CMI removal by someone in the chain between Sketchfab (and other sites), public repositories, and TRELLIS-500K was *incidental* to other processes necessary to use 3D models for generative AI training. Paragraphs 96 to 103 of the Complaint reflect this. The Complaint there alleges several steps necessary to obtain and use 3D models to train, then says that an "inherent consequence" of this process is the "separation between the creative content of a work and the CMI that accompanied it." Compl. ¶ 103. Nowhere does the Complaint suggest that this "separation" is anything other than a natural byproduct of technical processes that make training possible. That is not intentional conduct directed at the "integrity" of CMI, § 1202 (title), so the Complaint fails to allege the basic intentionality required for the first half of the double-scienter requirement.

For similar reasons, the Complaint is deficient on the second half of the requirement—the required showing of the defendant's knowledge or reason to know that CMI removal will facilitate

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

11

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

or conceal infringement. Though nominally a scienter requirement, the Ninth Circuit made clear in *Stevens v. Corelogic, Inc.*, that the requirement has an objective component. 899 F.3d 666. To allege that a defendant knew its actions would facilitate or conceal infringement, a plaintiff must demonstrate the necessary predicate that "future infringement is likely … to occur as a result of the removal or alteration of CMI." *Id.* at 674-75. This does not require a showing "that any specific infringement has already occurred." *Id.* But a plaintiff must at least allege "a pattern of such infringement likely to recur in the future," an "instance in which the removal of CMI … induced, enabled, facilitated, or concealed an infringement," or some "past 'pattern of conduct' or 'modus operandi'" that suggests that removal of CMI somehow aids copyright infringement. *Id.* at 675-76.

The Complaint makes no effort to satisfy that standard here. It repeats the conclusory assertion that Microsoft "knew, or had reasonable grounds to know" removal would facilitate infringement. Compl. ¶¶ 10, 150-151, 163-164. But the Complaint pleads no copyright infringement claim. It does not allege that any infringement has occurred. It identifies no copyrighted works. Nor does the Complaint allege any facts that would make downstream infringement likely as a result of removal of CMI.

The closest the Complaint comes to alleging a likelihood of infringement is to posit that at some point in the future, the inability to "identify [Beaulier as] the creator[] of [his] works or comply with the license conditions governing those works" could lead to infringement. Compl. ¶¶ 150-51, 162; *see also* Compl. ¶ 48 (alleging that Microsoft's conduct "created a substantial certainty that works subject to restrictive licensing conditions would be copied, processed, and used in AI training systems without authorization and without compliance with the terms governing those works"). But that is the kind of generalized speculation the Ninth Circuit has rejected as insufficient to satisfy the likelihood-of-infringement requirement. *Stevens*, 899 F.3d at 674 (rejecting speculation that CMI removal "might" conceal infringement). *Stevens* requires awareness that the defendant's actions "'*will* induce, enable, facilitate, or conceal' infringement." *Id.* at 673 (emphasis added) (citation omitted). A "general possibility" that CMI removal might lead to infringement is not enough. *Id.* at 673-74.

Courts routinely dismiss § 1202(b) claims at the pleading stage for failing to allege an objective likelihood that removal of CMI will result in copyright infringement.[2]  The Court should do so here.

## V.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed because it fails to state a claim for relief.

The undersigned certify that this memorandum contains 4622 words, in compliance with the Local Civil Rules.  The undersigned further certify that, per the Court's Chamber Procedures, Section 5.6, counsel for the parties met and conferred on June 5, 2026, prior to filing this motion and were unable to reach an agreement.  Therefore, the motion is opposed.

---

[2] *Harrington v. Pinterest, Inc.*, No. 20-cv-05290, 2021 WL 4033031, at *6 (N.D. Cal. Sept. 3, 2021) (dismissing § 1202 claims at pleading stage for failing to satisfy this requirement); *Philpot v. Alternet Media, Inc.*, No. 18-cv-04479, 2018 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018) (same); *Tremblay v. OpenAI, Inc.*, Nos. 23-cv-03223 and 23-cv-03416, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (dismissing CMI claim based on bare allegation that if CMI is removed, "ChatGPT users will not know if any output is infringing"); *Mills v. Netflix, Inc.*, No. 19-cv-07618, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020) (dismissing § 1202 claim because there were no plausible allegations linking CMI removal to future infringement or substantiating that defendants were aware that CMI removal "would cause future infringement"); *Harrington v. Pinterest, Inc.*, No. 20-cv-05290, 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022) (dismissing § 1202 claim where complaint lacked plausible allegations that defendant had knowledge about how plaintiff used CMI to police infringement); *Philpot*, No. 18-cv-04479, 2018 WL 6267876, at *5  (dismissing § 1202 claim where plaintiff "fail[ed] to plead any facts showing that [defendant] had the required mental state").

Dated: June 8, 2026                    ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/  Mark Parris*
    Mark Parris (WSBA No. 13870)
    mparris@orrick.com

    */s/  Deirdre Farrell*
    Deirdre Farrell (WSBA No. 61977)
    Deirdre.Farrell@orrick.com
    401 Union Street, Suite 3300
    Seattle, WA  98101-2668
    Telephone:  +1 206 839 4300
    Facsimile:  +1 206 839 4301

    */s/  Christopher Cariello*
    Christopher Cariello (Admitted *Pro Hac Vice*)
    ccariello@orrick.com
    51 West 52nd Street
    New York, NY 10019
    Telephone:  + 1 212 506 3778
    Facsimile:  +1 212 506 5151

*Attorneys for Defendant Microsoft Corporation*

MICROSOFT CORP.'S MOTION TO DISMISS
No. 2:26-cv-01031-JNW

14