# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated, | NO. 2:26-CV-01031 |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| MICROSOFT CORPORATION, Defendant. | |
| | **Hon. Jamal N. Whitehead** |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

MILBERG, PLLC
1700 7th Avenue, Suite 2100
Seattle, WA 98101

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 2

LEGAL STANDARD................................................................................................................. 4

ARGUMENT .............................................................................................................................. 5

    A.    Plaintiff States a Claim Under §§ 1202(b)(1) and (3) Based on Microsoft's Removal of CMI..... 5

        1.    The Complaint Plausibly Alleges Removal. ............................................................... 5

        2.    Microsoft's "Location of CMI" Argument Misstates the Statute and the Complaint. ............... 8

        3.    The Complaint Alleges More than Mere Omission................................................. 10

    B.    Plaintiff States a § 1202(b)(3) Claim Based on Microsoft's Distribution of Works. ................... 12

    C.    Plaintiff Adequately Pleads the Required Scienter. ........................................................ 14

        1.    Plaintiff Plausibly Alleges Intentional Removal........................................................ 14

        2.    Plaintiff Alleges Knowledge That Removal Would Induce, Enable, Facilitate, or Conceal Infringement. ................................................................................................... 15

    D.    Any Dismissal Should Be With Leave to Amend. ........................................................ 19

CONCLUSION.......................................................................................................................... 20

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
   2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) ............................................................. 7

*ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*,
   667 F. Supp. 3d 411 (S.D. Tex. 2023) ......................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 4

*Batra v. PopSugar, Inc.*,
   2019 WL 482492 (N.D. Cal. Feb. 7, 2019) ............................................................... 16

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
   2024 WL 3522196 (N.D. Cal. July 23, 2024) .............................................................. 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 4

*Concord Music Group, Inc., v. Anthropic PBC*,
   2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) .............................................................. 16

*Doe 1 v. GitHub, Inc.*,
   2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) ............................................................. 8

*Doe 1 v. GitHub, Inc.*,
   672 F. Supp. 3d 837 (N.D. Cal. 2023) .................................................................. 5, 14

*Doe 1 v. GitHub, Inc.*, 2024 WL 4336532 (N.D. Cal. Sept. 27, 2024); No. 24-7700(9th Cir. argued Feb.
   11, 2026) ...................................................................................................................... 8

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
   2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ........................................................... 7

*Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*,
   764 F.2d 619 (9th Cir. 1985) ....................................................................................... 5

*Entrepreneur Media, LLC v. Meta Platforms, Inc.*,
   2026 WL 898253 (N.D. Cal. Mar. 30, 2026) ............................................................ 14

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - iii

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

*Fischer v. Forrest*,
   286 F. Supp. 3d 590 (S.D.N.Y. 2018) .................................................................................. 8

*Friedman v. Live Nation Merch., Inc.*,
   833 F.3d 1180 (9th Cir. 2016) ............................................................................................. 9

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   2015 WL 263556 (D. Haw. Jan. 21, 2015) ........................................................................... 7

*GC2 Inc. v. Int'l Game Tech. PLC*,
   255 F. Supp. 3d 812 (N.D. Ill. 2017) .................................................................................. 11

*Harrington v. Pinterest, Inc.*,
   2022 WL 4348460(N.D. Cal. Sept. 19, 2022) ..................................................................... 18

*Howarth v. Carsanaro Landscaping, Inc.*,
   2023 WL 5978298 (D. Mass. July 21, 2023) ...................................................................... 12

*ICONICS, Inc. v. Massaro*,
   192 F. Supp. 3d 254 (D. Mass. 2016) ................................................................................... 8

*In re Century Aluminum Co. Securities Litigation*,
   729 F.3d 1104 (9th Cir. 2013) ........................................................................................... 11

*Izmo, Inc. v. Roadster, Inc.*,
   2019 WL 13210561 (N.D. Cal. May 17, 2019) ................................................................ 5, 15

*Kadrey v. Meta Platforms, Inc.*,
   2025 WL 744032 (N.D. Cal. Mar. 7, 2025) .................................................................... 15, 16

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) ................................................................................... 8

*Logan v. Meta Platforms, Inc.*,
   636 F. Supp. 3d 1052 (N.D. Cal. 2022) ................................................................................. 9

*Lopez v. Apple, Inc.*,
   558 F. Supp. 3d 821 (N.D. Cal. 2021) ................................................................................... 9

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ........................................................................................... 19

*Mango v. BuzzFeed, Inc.*,
   970 F.3d 167 (2d Cir. 2020) ........................................................................................ 13, 16

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ............................................................................................. 4

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ............................................................................................. 5

*Mills v. Netflix, Inc.*,
    2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ....................................................................... 18

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011) ................................................................................................ 9

*New York Times Co. v. Microsoft Corp.*,
    2025 WL 1009179 (S.D.N.Y. Apr. 4, 2025) .......................................................... 12, 14, 17

*Oracle USA, Inc. v. Rimini St., Inc.*,
    879 F.3d 948 (9th Cir. 2018) ............................................................................................. 16

*Pac. Studios Inc. v. W. Coast Backing Inc.*,
    2012 WL 12887637 (C.D. Cal. Apr. 18, 2012) ................................................................. 10

*Philpot v. Alternet Media, Inc.*,
    2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) .................................................................. 19

*Powers v. Caroline's Treasures Inc.*,
    382 F. Supp. 3d 898 (D. Ariz. 2019) ................................................................................... 9

*Raw Story Media, Inc. v. OpenAI, Inc.*,
    756 F. Supp. 3d 1 (S.D.N.Y. 2024) ................................................................................... 12

*Robbins v. Oakley, Inc.*,
    2018 WL 5861416 (C.D. Cal. Sept. 27, 2018) .................................................................. 16

*Schneider v. YouTube, LLC*,
    2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) .............................................................. 16, 17

*Splunk Inc. v. Cribl, Inc.*,
    662 F. Supp. 3d 1029 (N.D. Cal. 2023) ............................................................................... 8

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir.2011) ............................................................................................ 11

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) .................................................................................. 5, 15, 16

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - v

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

*The Intercept Media, Inc. v. OpenAI, Inc.*,
   767 F. Supp. 3d 18 (S.D.N.Y. 2025) ................................................................................... 14

*Tremblay v. OpenAI, Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024) .......................................................................... 17, 18

*Williams v. Cavalli*,
   2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ...................................................................... 9

**Statutes**

17 U.S.C. § 1202 ........................................................................................................... passim

17 U.S.C. § 1202(b) ...................................................................................................... passim

17 U.S.C. § 1202(b)(1) ........................................................................................................ 8

17 U.S.C. § 1202(b)(3) ..................................................................................... 1, 8, 13, 18

17 U.S.C. § 1202(c) .............................................................................................. 5, 9, 11

17 U.S.C. § 1202(c)(1)–(3), (6)–(7) ................................................................................... 5

17 U.S.C. § 1202(c), (c)(7) ................................................................................................ 6

17 U.S.C. §§ 1202(b)(1) and 1202(b)(3) ...................................................................... 1, 5

**Rules**

Fed. R. Civ. P. 15(a)(2) ...................................................................................................... 19

Fed. R. Civ. P. 8(d)(2) ....................................................................................................... 11

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - vi

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

## **INTRODUCTION**

Microsoft's motion asks the Court to resolve fact-intensive questions about a proprietary AI-training pipeline on the pleadings. The Complaint plausibly alleges that Plaintiff's and Class Members' 3D works were published with copyright management information ("CMI") identifying the creator, title, source platform, attribution requirements, license terms, NoAI restrictions, and other conditions governing use; that Microsoft used Objaverse-derived datasets, including TRELLIS-500K, to locate and obtain those works from repositories where that CMI accompanied the works; that Microsoft copied, rendered, normalized, and otherwise processed those works into machine-learning inputs that retained their expressive 3D content while severing the accompanying CMI; and that Microsoft then used those CMI-stripped copies or representations in connection with TRELLIS, TRELLIS.2, TRELLIS-500K, and related generative 3D AI systems. Those allegations state claims under 17 U.S.C. §§ 1202(b)(1) and 1202(b)(3).

First, Plaintiff states claims under §§ 1202(b)(1) and (b)(3) based on Microsoft's removal of CMI. Microsoft tries to recast the Complaint as alleging only passive non-preservation, omission, or violation of usage restrictions. But the Complaint alleges a direct removal chain: Plaintiff's and Class Members' works were hosted and distributed with accompanying creator, source, license, attribution, NoAI, and other rights-management information; Objaverse-derived datasets preserved source references that allowed Microsoft to identify and obtain those works; and Microsoft then copied, rendered, normalized, and processed the works into training inputs that retained the works' expressive content while severing the accompanying CMI. Microsoft's "location of CMI" argument fares no better. Section 1202 protects CMI conveyed in connection with a work, not only CMI embedded inside a work. The Complaint alleges that the CMI appeared on or in connection with the works on source-platform pages, creator accounts, license fields, attribution information, machine-readable NoAI metadata, and source-reference datasets. Microsoft cannot defeat those allegations by treating model-specific CMI as disconnected webpage information or by demanding discovery-level details about its own proprietary ingestion and preprocessing systems.

Second, Plaintiff states a § 1202(b)(3) claim based on Microsoft's distribution of works. Section 1202(b)(3) is not limited to handing over the original 3D model files in their original form. The Complaint

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 1

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

alleges that Microsoft used Objaverse-derived datasets to obtain CMI-bearing works, stripped or severed CMI during preprocessing, and then distributed or made available CMI-stripped works, copies, or representations in connection with its generative 3D systems. At minimum, Microsoft's contrary characterization of what its datasets, training inputs, released materials, and related systems contained presents factual issues that cannot be resolved on a motion to dismiss.

Third, Plaintiff adequately pleads the required scienter. Microsoft characterizes any CMI loss as an incidental byproduct of AI training (i.e., not intentional) and argues that Plaintiff has not connected removal to any infringement. But the Complaint alleges a deliberate pipeline, created and implemented by Microsoft to identify and obtain CMI-bearing works, it then copied, rendered, normalized, and preprocessed those works into training inputs while separating them from their CMI. It also explains why the missing CMI mattered: without creator, source, license, attribution, and NoAI information, Microsoft and downstream users could not identify the works, trace them to their creators, determine applicable license restrictions, provide attribution, avoid prohibited commercial or AI-training uses, or police further unauthorized use. At the pleading stage, those allegations support a reasonable inference that Microsoft intentionally removed, or caused the removal of, CMI and knew, or had reason to know, that doing so would induce, enable, facilitate, or conceal infringement.

For these reasons, more fully explained below, the Court should DENY Microsoft's motion.

## **FACTUAL BACKGROUND**

The Complaint alleges that Plaintiff and Class Members are 3D model artists and creators who publish and distribute original 3D models on public platforms such as Sketchfab, Thingiverse, Polycam, and other digital asset repositories. ECF No. 1, Complaint ("Compl.") ¶¶ 23–29, 32–37, 68.[1]

Those works were conveyed in connection with CMI, including the title of the work, creator identity, links to the creator's account or portfolio, Creative Commons license designations, attribution

---

[1] Although Microsoft denigrates the Complaint as a "one-size-fits-all" pleading (Mot. at 1), this framing ignores the Microsoft-specific allegations in the Complaint, including that Microsoft played a central role in developing and disseminating generative 3D technology through TRELLIS; publicly acknowledged relying on Objaverse-derived datasets; released TRELLIS in December 2024, TRELLIS-500K later that month, and TRELLIS.2 in December 2025; disclosed collecting approximately 500,000 high-quality 3D assets from Objaverse-XL and related datasets; and curated and publicly released TRELLIS-500K. *Id*. at ¶¶ 12–14, 31, 81, 108–112.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 2

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

requirements, source-platform information, and other terms and conditions governing use. *Id*. at ¶¶ 37–45, 63–68, 86. For certain works hosted on Sketchfab, the Complaint also alleges that creators could implement (and Plaintiff did so) a machine-readable "NoAI" tag to designate that their models may not be used for generative-AI data collection or AI training. *Id*. at ¶¶ 52–62, 123–130.[2]

The Complaint further alleges that researchers and technology companies (like Microsoft) compile references to such 3D works into large datasets that function as structured indexes or source maps for users to locate and obtain the underlying works from their original source platforms. *Id*. at ¶¶ 74–81, 85–88. Objaverse-XL, for example, allegedly contains more than ten million 3D assets collected from public repositories such as Sketchfab, Thingiverse, Polycam, GitHub, and others, while preserving references to original source files, source repositories, and creator accounts. *Id*. at ¶¶ 2, 8, 74–81, 85–88. According to the Complaint, Microsoft used Objaverse-derived datasets, including one it created called TRELLIS-500K, to identify Plaintiff's and Class Members' works. *Id*. at ¶¶ 12–14, 81, 87–90, 96–99, 108–12. Microsoft used those datasets as source maps to locate the works on public repositories and obtain copies for preprocessing and training. *Id*. at ¶¶ 85–87, 90–91, 96–99, 109.

After obtaining the works, Microsoft allegedly copied, converted, rendered, normalized, and otherwise processed them through preprocessing pipelines. *Id*. at ¶¶ 87–88, 90–107, 109, 112. The Complaint alleges that this process retained the creative content of the works but removed, failed to preserve, or severed the accompanying CMI, including creator-identifying information, licensing metadata, attribution requirements, NoAI-related restrictions, and other rights-management information conveyed with the works when originally distributed. *Id*. at ¶¶ 87–88, 101–107, 112, 145–151, 160–164.

---

[2] Microsoft's emphasis on the fact that Plaintiff's and Class Members' works are "publicly available" (Mot. at 3-4) misses the point. The Complaint alleges that the public 3D-model ecosystem operates through per-work licensing frameworks that allow creators to share works while preserving conditions on use. *Id*. at ¶¶ 35–42. Those conditions include attribution requirements, noncommercial-use restrictions, share-alike obligations, Creative Commons license designations, and, for certain Sketchfab hosted works, NoAI restrictions. *Id*. at ¶¶ 39–48, 52–62, 63–68. Public availability does not authorize Microsoft to remove the CMI that communicated those conditions, or distribute the works, after having removed the CMI, in ways that violate of those terms of use.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 3

The Complaint further alleges that Microsoft used those CMI-stripped representations to train its TRELLIS generative 3D systems. *Id*. at ¶¶ 105–109, 112.[3] Microsoft released its TRELLIS model in December 2024, released TRELLIS-500K later that month, and released an updated version called TRELLIS.2 in December 2025.[4] *Id*. at ¶ 108. Microsoft publicly disclosed collecting approximately 500,000 high-quality 3D assets from public datasets including Objaverse-XL, rendering 150 images per asset, and using those assets to train its generative 3D models. *Id*. at ¶¶ 109-12. As part of the same TRELLIS project, Microsoft allegedly curated and publicly released TRELLIS-500K, a filtered subset derived substantially from Objaverse-XL, without the per-file license information preserved in Objaverse-XL. *Id*. at ¶¶ 13–14, 81, 108–112. Thus, the Complaint alleges that Microsoft acted both as a user of Objaverse-derived works to train its own generative 3D models (TRELLIS and TRELLIS.2), and as a distributor of TRELLIS-500K, an Objaverse-XL derivative dataset allegedly designed to facilitate further generative 3D model training by others. *Id*. at ¶¶ 108–112.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, Plaintiff need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff is not required to plead "detailed factual allegations," nor does Rule 8 demand "heightened fact pleading of specifics." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Instead, the Court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal is improper where the allegations raise the plaintiff's right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

---

[3] Microsoft's description of TRELLIS as useful or "transformative" (Mot. at 2) is beside the point. The Complaint makes clear this litigation is not a challenge of generative AI products as a whole. *Id*. at ¶ 4.

[4] Microsoft describes TRELLIS.2 as "purely a research project," (Mot. at 3 n. 1); however, the Complaint alleges commercial context and integration into commercial products. *Id*. at ¶¶ 12–14, 31, 82–84, 105–112. Additionally, Microsoft's factual background describes TRELLIS as learning patterns and creating new 3D models. But that framing misrepresents the complaint's theory as relegated to only an output theory when the relevant allegations also concern the training-data pipeline. *Id*. at ¶¶ 87–88, 96–107, 112.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 4

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

That principle has particular force where (as here) a complaint presents a developing or novel legal theory. Rule 12(b)(6) dismissals "are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004). Courts therefore should allow new legal theories to be "explored and assayed in the light of actual facts rather than a pleader's suppositions." *Id*. (quoting *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985)).

<u>ARGUMENT</u>

**A. Plaintiff States a Claim Under §§ 1202(b)(1) and (3) Based on Microsoft's Removal of CMI.**

**1. The Complaint Plausibly Alleges Removal.**

Microsoft does not seriously dispute that the information alleged here, including: creator names, work titles, licensing terms, attribution requirements, source information, and usage restrictions qualify as CMI. Mot. at 6-7. Nor could it. Section 1202(c) defines CMI broadly to include the title and other information identifying the work, the name of and other identifying information about the author or copyright owner, and terms and conditions for use of the work. 17 U.S.C. § 1202(c)(1)–(3), (6)–(7). The Ninth Circuit has also recognized that "terms and conditions for use of the work" unequivocally constitute CMI. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671 (9th Cir. 2018). Courts likewise recognize that attribution information, licensing information, and similar rights-management information may qualify as CMI when conveyed in connection with the work. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 855-56 (N.D. Cal. 2023); *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 13210561, at *2–3 (N.D. Cal. May 17, 2019). The Complaint alleges that Plaintiff and Class Members distributed their 3D models on platforms such as Sketchfab, Thingiverse, Polycam, and other digital repositories together with creator-identifying information, titles, creator accounts, license designations, attribution requirements, source-platform information, and terms governing downstream use. Compl. ¶¶ 37–45, 65–69, 76–89, 123–30, 141–42, 158–59. It further alleges that Sketchfab's NoAI designation visible to users and implemented through machine-readable metadata, communicates a creator-imposed use restriction against AI training. *Id*. at ¶¶ 52–64, 123–30. Thus, whether the information alleged constitutes CMI is not at issue.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 5

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

Instead, Microsoft attempts to muddy the waters regarding "removal" of CMI. Mot. at 7–9. It first invites the Court to infer that Microsoft may have obtained Plaintiff's works without any CMI in the first place. But that inference runs directly contrary to the Complaint, where Plaintiff alleges that repositories such as Sketchfab, Thingiverse, Polycam, GitHub, and others distribute creator-uploaded models together with CMI, including creator identity, licensing terms, attribution requirements, and other information governing permitted use. Compl. ¶ 86. The Complaint further alleges that Objaverse-XL preserved references to the original source files, repositories, and creator accounts from which the models were obtained, allowing downstream users to trace assets back to the platform and creator from which they originated. *Id*. at ¶¶ 79–80. TRELLIS-500K, in turn, is alleged to be a curated collection of approximately 500,000 3D assets derived from Objaverse-XL and designed for training generative 3D models. *Id*. at ¶ 81. Microsoft allegedly used these datasets as source maps to identify and obtain copies of 3D models, and after obtaining those works, copied, converted, rendered, normalized, and otherwise processed them through machine-learning preprocessing pipelines. *Id*. at ¶¶ 87–90. In that process, the creator-identifying information, licensing metadata, and other CMI that accompanied the works when originally distributed were removed, resulting in CMI-stripped representations of Plaintiff's works within Microsoft's AI training datasets and fed into training for the generative 3D systems themselves. *Id*. at ¶¶ 87–88.

Microsoft next offers a wayward example involving someone who copies the contents of a book but not its cover. Mot. at 7. But that example illustrates the problem with Microsoft's narrow reading of § 1202. Microsoft's position would effectively write into § 1202 a rule that intentional, and carefully crafted omission can never constitute removal under the statute, even where the defendant deliberately copies the expressive work while leaving behind the CMI. Under Microsoft's theory, a defendant who physically tears the cover off that book before copying it might face liability, but a more sophisticated defendant who designs a technological workflow to copy everything except the cover would not. That cannot be right. Section 1202 protects CMI "conveyed in connection with" a work, including "identifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c), (c)(7). The statute therefore reaches a defendant who takes the work and severs the connection between the expressive content and the accompanying CMI. That is precisely what Plaintiff alleges here. Microsoft allegedly used Objaverse-

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 6

derived datasets to obtain the underlying 3D works from repositories where they were distributed with CMI, and then processed those works into training representations that no longer retained or communicated the creator-identifying information, licensing terms, attribution requirements, NoAI-related restrictions, and other CMI originally associated with the works. Compl. ¶¶ 79–88, 101–112. Accepting Microsoft's theory would give AI developers and other sophisticated entities an easy roadmap around § 1202—just structure the ingestion pipeline so that CMI is systematically left behind, while the expressive content is used for training. That reading would not effectuate the text or purpose of § 1202.

For support, Microsoft cites *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022). Mot. at 7. But that case involved alleged knockoff clothing where the defendant omitted the plaintiff's branding from non-identical imitation products, leaving the court to speculate as to whether any CMI had ever been removed. *Id*. at * 3-4. Microsoft's cite to *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, 2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) suffers the same fate. Mot. at 7. There, again, the defendants allegedly produced knockoff jewelry without carrying the plaintiff's copyright notice onto those products. *Id*. at *10. The court held that § 1202(b) "encompasses only removal and alteration," not omission of CMI "from the copies." *Id*. Those cases are far afield from the situation here where Plaintiff alleges a direct removal of CMI chain from copies of the works: Microsoft obtained the original 3D works from repositories with CMI, and then copied, rendered, normalized, and preprocessed those same works into training representations that retained the expressive content while removing the accompanying CMI. Compl. ¶¶ 8, 37–45, 52–64, 63–68, 79–88, 96–112, 145–51, 160–64.

Microsoft then cites *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556 (D. Haw. Jan. 21, 2015) to blithely suggest that the DMCA requires "identicality" in the output and doesn't cover removal of CMI from "derivative works." Mot. at 7.[5] There is no support in the statute for such a

---

[5] The cases cited by Microsoft not only adopt an identicality requirement which, as noted, is not required by the statute, they also fail for other independent reasons. *Frost-Tsuji* is inapplicable because the opinion cited by Microsoft (a motion for reconsideration of the court's prior summary judgment ruling) was decided with the benefit of a fully developed factual record. *Frost-Tsuji*, 2015 WL 263556, at *4. The court reasoned that plaintiff failed to raise a genuine issue of material fact as to whether removal of CMI had occurred based solely on the fact that defendant possessed a derivative work without CMI. *Id*. at *3-4. Much more is alleged here, including that Microsoft

---

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 7

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

requirement. Section 1202(b)(1) prohibits intentional removal or alteration of CMI and does not require Plaintiff to allege that a defendant later distributed anything, let alone an identical copy of the original work. 17 U.S.C. § 1202(b)(1). Section 1202(b)(3) applies to distribution of "works" or "copies of works" knowing that CMI has been removed; but also does not contains an "identical copy" requirement. 17 U.S.C. § 1202(b)(3). Further, courts have regularly rejected a rigid identicality rule, or at minimum recognized that the issue is unsettled.[6] *See Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2024 WL 3522196, at *9 (N.D. Cal. July 23, 2024) (declining to dismiss § 1202 claim where the accused source code was alleged to be "strikingly similar," not identical, and recognizing a split in authority); *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1053 (N.D. Cal. 2023) (CMI removal from derivative works sufficient at pleading stage); *ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023) (rejecting identicality requirement based on statutory text and legislative history); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("the definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work").

### 2.    Microsoft's "Location of CMI" Argument Misstates the Statute and the Complaint.

Microsoft next argues that Plaintiff fails to plead where CMI was located and how Microsoft interacted with it. Mot. at 8. That argument fails for two reasons.

---

obtained copies of the original works from repositories with CMI, and then removed that CMI during preprocessing of the works into training inputs. Compl. ¶¶ 8, 37–45, 63–68, 79–88, 96–112, 145–51, 160–64.

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999), was also a summary-judgment decision involving an image-search engine that identified the originating website, gave users a link back to the source where CMI was available, and warned users that use restrictions and copyright limitations may apply—no such redeeming factors are present for Microsoft's conduct here. Finally, *Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018) is distinguishable because the defendant there did not copy the plaintiff's brochure or website; the accused advertisement allegedly shared only four discrete phrases and otherwise "b[ore] no resemblance" to the original works, so the court found no plausible removal of CMI from the plaintiff's works. *Id*. at 609. Here, Plaintiff alleges that Microsoft used Objaverse-derived source-reference datasets to obtain the original 3D works from repositories where CMI accompanied them, then copied, rendered, normalized, and preprocessed those works into training representations that retained the works' expressive 3D content while severing the accompanying creator, source, license, attribution, NoAI, and other CMI. Compl. ¶¶ 8, 37–45, 52–64, 63–68, 79–88, 96–112, 145–51, 160–64.

[6] Indeed, the issue of an "identicality" requirement within § 1202 of the DMCA is now certified for interlocutory appeal before the Ninth Circuit because there is substantial grounds for disagreement. *Doe 1 v. GitHub, Inc*., 2024 WL 4336532, at *2 (N.D. Cal. Sept. 27, 2024); No. 24-7700 (9th Cir. argued Feb. 11, 2026).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 8

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

First, the Complaint plainly does identify where the CMI was located in relation to the works. As noted, § 1202(c) does not require CMI to be embedded inside the file itself, it only requires that the information be "conveyed in connection with" copies or displays of the work. 17 U.S.C. § 1202(c). The Complaint details that CMI was on the source repositories where the works were hosted and distributed, in close proximity to the works, and that CMI included creator accounts, work pages, titles, attribution fields, license designations, source-platform information, and machine-readable NoAI tags. Compl. ¶¶ 37–45, 52–64, 65–69, 76–89, 123–30, 141–42, 158–59. It further alleges that Objaverse-XL preserved references to original source files, repositories, and creator accounts, making the origin of the works and associated CMI identifiable. *Id.* at ¶¶ 8, 76–89, 96–108. The Complaint makes clear that Microsoft relied on Objaverse-derived datasets, including TRELLIS-500K, to identify and obtain the works for preprocessing and training. *Id.* at ¶¶ 81, 87–90, 96–99. Microsoft therefore cannot plausibly claim that the CMI was unknown to it or disconnected from the works. Microsoft's demand for more technical details about how it downloaded the works from these repositories, and then moved those works through its own proprietary preprocessing systems, improperly sets a discovery-level bar for specificity that is simply not required by Rule 8 at the pleading stage. *See Lopez v. Apple, Inc.*, 558 F. Supp. 3d 821, 826 (N.D. Cal. 2021) (finding "sparse" allegations sufficient at the pleading stage where the facts lay exclusively within defendant's possession).

Second, Microsoft's attempt to isolate the NoAI tag as "just" webpage information ignores the Complaint's allegations and numerous courts' understanding of the phrase "conveyed in connection with" a work. Mot. at 8. Courts applying that language routinely hold that information located on, adjacent to, or in close proximity to, the displayed work is sufficient. *See Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. 2022) (holding that identifying information "immediately beneath" Wikimedia photographs was sufficiently close to qualify as CMI); *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 904 (D. Ariz. 2019) ("A number of courts have held that for CMI to be protected, it must be near, around, or on the original work."); *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1187–88 (9th Cir. 2016) (image credits near photographs qualified as CMI); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (photographer's name in a gutter credit near the image qualified as CMI); *Williams v. Cavalli*, 2015 WL 1247065, at *2 (C.D. Cal. Feb. 12, 2015) (signatures appearing within mural were

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 9

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

conveyed in connection with the mural); *Pac. Studios Inc. v. W. Coast Backing Inc.*, 2012 WL 12887637, at *2–3 (C.D. Cal. Apr. 18, 2012) (alphanumeric designation on border of online image constituted CMI).

Plaintiff's NoAI designation was not a stray copyright notice buried somewhere distant on Sketchfab, nor a general website term disconnected from any particular work, it was applied to Plaintiff's individual Sketchfab models and conveyed with the display of those models on the repository. Compl. ¶¶ 54–60, 128–30. For human users, the NoAI designation visibly appeared directly beneath the model display, in the same location where users encountered rights and licensing information for that specific model. *Id.* at ¶¶ 54–58. When a user hovered over or interacted with the designation, Sketchfab explained the tag meant that the model could not be used for AI training. For automated crawlers, like those likely used by Microsoft, Plaintiff alleges that the NoAI restriction was machine-readable and included in the HTML metadata associated with each model's webpage, so that automated systems accessing or processing the model page would encounter the tag. *Id.* at ¶¶ 54–58, 63–64, 128–30. In other words, the NoAI designation functioned both visually and technically: it told human users that the specific model was not authorized for AI training, and it told machines crawling, scraping, or processing the page where the model was hosted the same thing. Microsoft's argument runs contrary to established caselaw which treats CMI, placed directly adjacent to the model itself, as "conveyed in connection" with the work.

### 3.    The Complaint Alleges More than Mere Omission

Microsoft then offers a scattershot of arguments—all of which fail. Mot. at 8–10.

*First*, Microsoft plays word games when it argues that Plaintiff alleging "removal" and "failure to preserve" together is fatal to his claims. Mot. at 8-9. The Complaint repeatedly alleges what the statute requires—actual removal, alteration, stripping, and separation of CMI. Compl. ¶¶ 5, 13–14, 44–45, 87–90, 101–08, 143–51, 160–64. Microsoft cannot erase those allegations by pointing to places where Plaintiff also alleges that Microsoft "failed to preserve" the same information. Accepting Microsoft's argument requires artificially narrow readings of the Complaint and § 1202(b). The Complaint alleges that Plaintiff's and Class Members' works were published with CMI and that Microsoft downloaded, copied, and processed those works into training representations that retained the expressive content while removing, altering, omitting, or severing CMI. *Id.* at ¶¶ 38–49, 51–68, 80–88, 91–104, 112, 141–150. Microsoft's argument asks the Court

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 10

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

to isolate one possible description of that conduct and credit only the non-liability version of events. Rule 8 does not permit that and expressly allows Plaintiff to "set out 2 or more statements of a claim . . . alternatively or hypothetically," and the pleading "is sufficient if any one of them would be adequate." Fed. R. Civ. P. 8(d)(2).[7]

Additionally, courts reject "unreasonably crabbed" readings of § 1202(b) that would make liability turn on whether CMI was physically embedded in a particular file or whether accompanying CMI was omitted during copying rather than deleted through some separately identified act. For example, in *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812 (N.D. Ill. 2017), the court held that reproducing the plaintiff's artwork while dropping the copyright notice that had accompanied it adequately alleged removal, because § 1202(c) protects CMI "conveyed in connection with" the work and does not require the CMI to sit embedded in the copied image itself. *Id.* at 821–22. Here, as articulated above (*see supra.* § A.2), Plaintiff alleges that CMI accompanied the 3D works on their source platform pages, and that Microsoft's ingestion and preprocessing process separated that CMI from the works. Compl. ¶¶ 63–68, 79–88, 96–112, 145–51. Plaintiff's allegations therefore state removal of CMI under § 1202(b).

*Second*, Microsoft argues that Plaintiff alleges, at most, violations of "usage restrictions" that are not actionable under § 1202. Mot. at 9. In so doing, Microsoft urges the Court to accept its misrepresentation of the Complaint and credit only the allegations that Plaintiff applied NoAI restrictions to hundreds of models and that the creators of Objaverse may have violated those restrictions. The Court should not ignore the broader chain of conduct Plaintiff actually pleads. The Complaint goes on, past the point where Microsoft stops, and alleges that Plaintiff's and Class Members' works were hosted on source platforms with CMI, including creator identity, attribution information, license terms, source-platform information, and NoAI-related restrictions, that Microsoft used Objaverse-derived datasets, including TRELLIS-500K, to identify and obtain those underlying works from those repositories, and that Microsoft

---

[7] Microsoft's citation to *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1108 (9th Cir. 2013) is incomplete. In fact, a closer reading of *Century Aluminum* demonstrates dismissal is not warranted here as the court stated: "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible,* plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id. at* 1108 (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.2011)).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 11

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

then copied, rendered, normalized, and otherwise processed the works for AI-training ingestion in a manner that separated the expressive content from the CMI that accompanied the works. Compl. ¶¶ 8, 12–14, 37–45, 52–64, 63–68, 79–88, 96–112, 145–51, 160–64. Thus, Microsoft's reading of the Complaint conveniently excises the Microsoft-specific allegations that make the § 1202 claim plausible. Plaintiff's claim is not based merely on the initial creation of Objaverse or on an abstract violation of a use restriction on the works. It is based on Microsoft's own conduct, namely using Objaverse-derived source references to obtain CMI-bearing works, processing those works into training inputs, and removing or severing the CMI during that process. *Id*. at ¶¶ 87–88, 96–112, 145–51, 160–64.

Microsoft's authority on this point is also unpersuasive. In *Howarth v. Carsanaro Landscaping, Inc.*, 2023 WL 5978298 (D. Mass. July 21, 2023), the § 1202 claim failed because the complaint did not allege that the defendant accessed the plaintiff's website to obtain the works. Without that allegation, the court could not infer that the defendant ever encountered the CMI, which appeared only on the website accompanying the works and was not embedded in the works themselves. *Id*. at *4.[8] Here, Plaintiff alleges what was missing in *Howarth*: that Microsoft used Objaverse-derived dataset links and source references to identify and obtain the underlying works from the public repositories where those works were hosted with CMI. Compl. ¶¶ 8, 79–88, 96–112. Those allegations support the inference that Microsoft encountered the CMI before separating that information from the works during processing.[9]

## B. Plaintiff States a § 1202(b)(3) Claim Based on Microsoft's Distribution of Works.

Microsoft's next argument is that Plaintiff's § 1202(b)(3) claim fails because Plaintiff does not allege Microsoft distributed copies of works with CMI removed. Mot. at 10-11. This argument fails because the

---

[8] It is worth noting that *Howarth* also held that even though CMI information was not embedded in the work itself, the close proximity of such information was sufficient, stating: "the copyrighted work is displayed adjacent to its title and a copyright notice. This information, appearing as it does 'in connection with' the copyrighted work on the website, constitutes CMI." *Howarth,* 2023 WL 5978298, at *4 (internal citation omitted).

[9] The dicta cited by Microsoft in *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 7 (S.D.N.Y. 2024) has no bearing here as the court was deciding whether plaintiff's DMCA claim was adequate to confer Article III standing for injunctive relief—an argument not raised by Microsoft here; heavily contested (*see New York Times Co. v. Microsoft Corp.*, 2025 WL 1009179 (S.D.N.Y. Apr. 4, 2025)); and currently on appeal. *See Raw Story Media, Inc. v. OpenAI, Inc.*, No. 25-1756 (2d. Cir. argued Mar. 18, 2026).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 12

Complaint adequately alleges distribution CMI-stripped copies or representations of Plaintiff's works through Microsoft's training datasets and systems.

Section 1202(b)(3) prohibits "distribut[ing] . . . works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority of the copyright owner or the law," where the defendant knows, or has reasonable grounds to know, that the act "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(3). A plaintiff states a claim by alleging "(1) the existence of CMI in connection with a copyrighted work; (2) that a defendant 'distribute[d] … works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or … having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(b)(3)).

Contrary to Microsoft's contention, Plaintiff's § 1202(b)(3) theory does not depend on a simplistic "source file transfer" theory. It is pleaded on the theory that Microsoft used Objaverse-derived datasets to identify and obtain copies of Plaintiff's works, stripped or severed the accompanying CMI during copying, rendering, preprocessing, and conversion into machine-learning inputs, and then distributed the resulting CMI-stripped copies or representations through TRELLIS, TRELLIS.2, TRELLIS-500K, and related commercial AI systems, developer platforms, and enterprise technologies. Compl. ¶¶ 12–14, 79–88, 105–112, 145–151, 160–164. Plaintiff need not identify the precise technical form of each copy or each downstream transfer before discovery. Those allegations of distribution are sufficient at the pleading stage.

Microsoft also points to Count II's reference to "otherwise using" works and argues that § 1202(b)(3) does not prohibit mere use. Mot. at 11. Plaintiff does not need an "otherwise using" theory for Count II to survive. As noted above, the Complaint alleges distribution. Compl. ¶¶ 13–14, 108–18, 162. To the extent Microsoft believes the phrase "otherwise using" is imprecise, that does not defeat the separately pleaded distribution theory. A claim survives if the factual allegations plausibly support a statutory violation, and The Complaint alleges that Microsoft distributed CMI-stripped works, copies, or representations in connection with TRELLIS-500K and related generative 3D systems. *Id.* at ¶¶ 13–14, 108–112, 160–164.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 13

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

**C. Plaintiff Adequately Pleads the Required Scienter.**

Microsoft next argues that Plaintiff fails to plead the "double scienter" requirement of § 1202(b). Mot. at 11–13. This argument also fails. The "double scienter" requirement asks whether the allegations permit the inference that the removal of CMI was intentional and that the defendant know, or have reasonable grounds to know, that its conduct will induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(b). This issue is, first and foremost, not appropriate for adjudication at the motion to dismiss stage. *See Entrepreneur Media, LLC v. Meta Platforms, Inc.*, 2026 WL 898253, at *2 (N.D. Cal. Mar. 30, 2026) ("Meta's arguments as to … the factual basis supporting scienter, cannot be resolved at the pleading stage.") Even if it were, the Complaint satisfies both parts.

**1.    Plaintiff Plausibly Alleges Intentional Removal.**

Microsoft argues that any CMI loss was an incidental byproduct of AI training, not intentional removal. Mot. at 11–12. That argument, again, asks the Court to draw Microsoft's preferred inference from a proprietary technical process before discovery.

Intent may be inferred from the facts alleged and pleaded through circumstantial facts. *See Doe 1*, 672 F. Supp. 3d at 857–58. A defendant acts intentionally when it deliberately designs or uses a process that strips or separates CMI from works, even if the removal occurs through an automated pipeline. For example, in *Doe 1*, the plaintiffs alleged that CMI routinely appeared in licensed code used to train Codex and Copilot, that defendants knew such CMI appeared in the training data, and that defendants trained the programs to ignore or remove CMI so the programs would no longer reproduce it. *Id.* at 858–59. The court held those allegations sufficient to infer that defendants "intentionally designed the programs to remove CMI." *Id.* at 858. Recent AI-training cases are in accord. In *New York Times Co. v. Microsoft Corp.*, the court held that plaintiffs plausibly alleged CMI removal where copyrighted works were allegedly copied into training datasets and CMI was removed during training-set creation. 777 F. Supp. 3d 283, 314–16 (S.D.N.Y. 2025). In *The Intercept Media, Inc. v. OpenAI, Inc.*, the court held that allegations of training-set extraction that omitted CMI were sufficient at the pleading stage. 767 F. Supp. 3d 18, 29–31 (S.D.N.Y. 2025). And in *Kadrey v. Meta Platforms, Inc.*, the court held that plaintiffs plausibly alleged intentional CMI

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 14

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

removal where Meta allegedly removed CMI from works used in AI training. 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025).

Here, the Complaint alleges that Microsoft deliberately curated, copied, converted, rendered, normalized, voxelized, and processed approximately 500,000 3D assets for TRELLIS-500K and used that Objaverse-derived dataset to train TRELLIS and TRELLIS.2. Compl. ¶¶ 12–14, 96–108, 143–51, 160–64. It alleges that these preprocessing steps separated the expressive 3D content from creator attribution, license metadata, NoAI restrictions, and other CMI. *Id*. at ¶¶ 101–08, 145–51, 160–64. It further alleges that Microsoft knew or had reason to know that assets in Objaverse-derived datasets originated on platforms that distribute models with creator attribution, license designations, and other CMI. *Id*. at ¶¶ 8, 42–45, 76–89, 148–49. Those allegations support a reasonable inference that Microsoft's removal of CMI was not accidental; it was part of the design and operation of Microsoft's AI training and dataset-curation pipeline.

Microsoft's "natural byproduct" framing is a merits defense, not a pleading defect. Whether CMI removal was avoidable, how Microsoft designed its pipeline, whether Microsoft could have preserved CMI, and whether Microsoft intentionally chose not to do so are factual questions not appropriate for disposition at this stage. The Complaint plausibly alleges an intentional design choice and that states a claim with the required scienter.

### 2. Plaintiff Alleges Knowledge That Removal Would Induce, Enable, Facilitate, or Conceal Infringement.

Microsoft next argues that Plaintiff fails to allege that Microsoft knew its conduct would contribute to infringement and that Plaintiff does not identify any underlying act of infringement. Mot. at 11-13.

*First*, Microsoft's argument is premised on *Stevens*, which imposed a summary-judgment level of evidentiary burden at the pleading stage. 899 F.3d at 671. *Stevens* held that a plaintiff ultimately must make an "affirmative showing" that CMI removal is connected to likely infringement. *Id.* at 674–75. Courts in this Circuit have rightly declined to treat *Stevens* as a Rule 12 bar where the complaint alleges facts supporting a plausible inference that the defendant knew removal carried a substantial risk of inducing, enabling, facilitating, or concealing infringement. *See Izmo*, 2019 WL 13210561, at *3–4;

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 15

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

*Schneider v. YouTube, LLC*, 2022 WL 3031212, at \*2 (N.D. Cal. Aug. 1, 2022); *see also Robbins v. Oakley, Inc.*, 2018 WL 5861416, at \*3 (C.D. Cal. Sept. 27, 2018).

*Second*, the statute requires knowledge or reasonable grounds to know that removal will "induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b). It does not require Plaintiff to plead a completed copyright infringement claim as a separate count. Nor does it require Plaintiff to identify a particular downstream user who has already infringed. *Stevens* itself recognized that a plaintiff need not show "that any specific infringement has already occurred." 899 F.3d at 675.

*Third*, even if the statute does require specifying an infringement and identifying the infringer, Plaintiff's Complaint satisfies this. The Complaint alleges that the works were subject to license conditions, including attribution requirements, noncommercial-use restrictions, share-alike obligations, and, for works marked with Sketchfab's NoAI designation, restrictions on AI-training use, and that Microsoft used those works in commercial AI-training systems after removing or failing to preserve the CMI necessary to identify and comply with those conditions. Compl. ¶¶ 37–50, 52–64, 80–81, 86–90, 101–12, 123–30, 145–51, 160–64. "When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018), *rev'd on other grounds*, 139 S. Ct. 873 (2019). *Mango*, 970 F.3d at 172–73, supports Plaintiff's theory. There, the Second Circuit held that the double-scienter requirement was satisfied at the pleading stage where removal of CMI concealed the defendant's own infringement. *Id. Mango* is not alone. In *Concord Music Group, Inc., v. Anthropic PBC*, 2025 WL 4808984 (N.D. Cal. Oct. 6, 2025), the court sustained § 1202(b) allegations where the defendant allegedly used dataset-curation tools that removed CMI and thereby concealed its own unauthorized training use. *Id.* at \*4–6. The court stated: "[b]ecause [defendant] allegedly copied the datasets discussed above, to curate a dataset to train [its AI product], and removed the CMI therefrom, the Court can plausibly infer that [defendant] did so 'knowing that removing the CMI would help conceal the alleged infringement.'" *Id.* at \*5 (quoting *Batra v. PopSugar, Inc.*, 2019 WL 482492, at \*2 (N.D. Cal. Feb. 7, 2019)). In *Kadrey*, the court held that plaintiffs plausibly alleged that Meta removed CMI to conceal infringement where Meta allegedly knew its model could memorize and output CMI unless CMI was removed and took steps to reduce that risk. *Kadrey*, 2025 WL 744032, at \*2. In *Schneider*, the court

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 16

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

held allegations that YouTube knew uploaded works routinely contained CMI, knew CMI was valuable to copyright owners, and knew that works with missing CMI could facilitate infringement supported a plausible inference of the required scienter. 2022 WL 3031212, at *2. And in *New York Times*, the court held that § 1202(b) is satisfied where CMI removal plausibly conceals the defendant's own alleged infringement. 777 F. Supp. 3d at 315–16.

The same inference should follow here. Plaintiff alleges that the works were posted with CMI identifying the creator, title, source repository or platform page, attribution requirements, Creative Commons license terms, NoAI restrictions, and other conditions governing use. Compl. ¶¶ 37–45, 52–64, 65–69, 81, 86–88, 123–30, 141–42, 158–59. It further alleges that Microsoft used Objaverse-derived datasets, including TRELLIS-500K, to locate and obtain those works, processed them into AI-training representations through copying, rendering, normalization, and related preprocessing steps, and severed the works' expressive content from the CMI needed to determine who created the works, where they came from, what licenses governed them, and whether AI-training use was permitted or prohibited. *Id*. at ¶¶ 12–14, 81, 87–90, 96–112, 145–51, 160–64. Therefore, the Complaint alleges more than a "general possibility" of infringement, it explains why removal of CMI enabled Microsoft's use of the works in ways that violated or exceeded the governing license terms while also obscuring the information necessary to identify, trace, and police further unauthorized use. On those facts, the alleged CMI removal was part of the same dataset-curation and training process that enabled Microsoft's infringement.

Microsoft relies on *Tremblay, Harrington, Philpot, Mills*, for support. Mot. at 13 n. 2. But those cases involved complaints that failed to connect CMI removal to any plausible mechanism of infringement or failed to allege that defendants knew how CMI was used to police infringement.

For example, in *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024) the court dismissed § 1202(b) claims because the plaintiffs alleged only, in conclusory fashion, that OpenAI removed CMI "[b]y design," without facts showing how CMI was removed during training or why the alleged omission gave OpenAI reason to know its outputs would induce, enable, facilitate, or conceal infringement. *Id.* at 779. The court contrasted those allegations with *Doe 1*, where plaintiffs alleged where CMI appeared, that defendants knew it appeared repeatedly, and that defendants trained the programs to

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 17

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

ignore or remove it. *Id.* This case is like *Doe 1*, not *Tremblay*. Nor does *Tremblay* defeat Plaintiff's § 1202(b)(3) claim because that count failed in *Tremblay* because plaintiffs did not allege distribution of their books or copies of their books (*Tremblay*, 716 F. Supp. 3d at 780), whereas here Plaintiff alleges that Microsoft used, incorporated, released, and redistributed CMI-stripped copies or representations in TRELLIS, TRELLIS.2, TRELLIS-500K, and related generative 3D AI systems and developer-facing technologies. Compl. ¶¶ 13–14, 105–12, 145–51, 160–64.

Similarly, in *Harrington v. Pinterest, Inc.*, 2022 WL 4348460(N.D. Cal. Sept. 19, 2022), the plaintiff alleged wholesale metadata stripping but did not plead facts showing Pinterest knew that the specific works contained metadata constituting CMI when uploaded, or that removal of that metadata would aid infringement. *Id.* at *4–8. Here, Plaintiff alleges that CMI accompanied the works as hosted and distributed on public repositories, that Objaverse-derived materials preserved source references to that CMI, and that Microsoft used those materials to obtain the works and then severed the CMI during preprocessing. Compl. ¶¶ 8, 37–45, 52–64, 65–69, 76–88, 96–112, 145–51, 160–64.

*Mills v. Netflix, Inc.*, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020), is also readily distinguishable. There, the court applied the *Stevens* summary judgment scienter standard to sparse allegations that were pled largely on information and belief and lacked any factual support connecting the alleged CMI removal to any likely infringement. *Id.* at *1–4. The complaint also failed because: (1) the attribution information that the plaintiff claimed had been removed was actually reproduced with the YouTube clips used in the documentary, defeating any plausible allegation of removal; (2) the alleged "title" CMI was not on or conveyed with the YouTube video itself, so the complaint did not plausibly allege that the title was in fact CMI; and (3) plaintiff's vague references to unspecified "other metadata" were too conclusory to identify a bona fide category of CMI or explain how it had been removed. *Id.* None of those flaws are present here. The Complaint identifies specific categories of CMI that accompanied the 3D works as hosted and distributed on public repositories (Compl. ¶¶ 37–45, 52–64, 65–69, 80–81, 86–88, 123–30, 141–42, 158–59), how Microsoft's preprocessing pipeline for AI training inputs removed or severed the CMI from the expressive 3D content (Compl. ¶¶ 8, 12–14, 81, 87–90, 96–112, 145–51, 160–64), and explains why Microsoft, and downstream users of its generative 3D systems, could not identify the creators, determine

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 18

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

the governing license terms, comply with attribution or noncommercial restrictions, or determine whether AI-training use was prohibited due to the removal of that CMI. Compl. ¶¶ 42–48, 52–64, 101–12, 145–51, 160–64.

Finally, *Philpot v. Alternet Media, Inc.*, 2018 WL 6267876, at *3–5 (N.D. Cal. Nov. 30, 2018), is likewise distinguishable. *Philpot* was brought primarily as a copyright-infringement case involving the defendant's alleged use of a single Willie Nelson photograph in a Facebook meme. *Id*. at *1-2. The court allowed the copyright claim to proceed but dismissed the DMCA claim because the plaintiff "fail[ed] to plead any facts showing that [defendant] had the required mental state." *Id*. at *5. In other words, the DMCA allegations were essentially a threadbare recital that the defendant removed CMI knowing it would induce, enable, facilitate, or conceal infringement, without any factual allegations supporting that inference. That is not the case here. Plaintiff alleges that Microsoft had the required mental state because Microsoft used Objaverse-derived datasets to identify and obtain 3D works that were accompanied by creator attribution, source-platform information, license terms, attribution requirements, and NoAI restrictions; processed those works through copying, rendering, normalization, and related preprocessing steps; and then used the resulting CMI-stripped representations to train TRELLIS, TRELLIS.2, and related generative 3D AI systems. Compl. ¶¶ 8, 37–45, 52–64, 65–69, 81, 86–90, 96–112, 145–51, 160–64. And here, Microsoft allegedly knew, or had reason to know, that stripping creator, source, license, attribution, and NoAI information from 3D works would facilitate or conceal unauthorized AI-training use and make it harder for creators to trace, police, and enforce their rights. Compl. ¶¶ 42–48, 52–64, 101–12, 145–51, 160–64.

**D. Any Dismissal Should Be With Leave to Amend.**

Microsoft's motion should be denied in its entirety; however, if the Court concludes that any claim is insufficiently pled, dismissal should be with leave to amend. Rule 15 directs courts to freely grant leave when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave should only be denied where amendment would be futile, prejudicial, or sought in bad faith. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted unless amendment would be futile). None of those circumstances exists here. Thus, dismissal with prejudice would be inappropriate.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 19

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

## CONCLUSION

For these reasons, Plaintiff plausibly states claims under §§ 1202(b)(1) and 1202(b)(3). Therefore, the Court should DENY Microsoft's Motion.

Date: July 13, 2026                                    Respectfully Submitted,

                                                       */s/ Jason T. Dennett*
                                                       Jason T. Dennett
                                                       **MILBERG, PLLC**
                                                       1700 7th Avenue, Suite 2100
                                                       Seattle, WA 98101
                                                       Tel: 206-949-1190
                                                       jdennett@milberg.com

                                                       Gary M. Klinger (pro hac vice)
                                                       William J. Edelman (pro hac vice)
                                                       **MILBERG, PLLC**
                                                       227 W. Monroe Street, Suite 2100
                                                       Chicago, IL 60606
                                                       Tel: 866.252.0878
                                                       gklinger@milberg.com
                                                       wedelman@milberg.com

                                                       Michael A. Acciavatti (admitted *pro hac vice*)
                                                       **MILBERG, PLLC**
                                                       405 East 50th Street
                                                       New York, NY 10022
                                                       Tel: 212.594.5300
                                                       macciavatti@milberg.com

                                                       *Attorneys for Plaintiff and the Proposed Class*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 20

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**

**CERTIFICATE OF SERVICE**

I, Jason T. Dennett, hereby certify that on July 13, 2026, I caused the foregoing document to be filed with the Clerk of the Court using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all counsel of record registered to receive electronic service in this action. I certify that this memorandum contains 7,928 words, in compliance with the Local Civil Rules.

*/s/ Jason T. Dennett*

Jason T. Dennett

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 21

**MILBERG, PLLC**
**1700 7th Avenue, Suite 2100**
**Seattle, WA 98101**