The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>MICROSOFT CORPORATION,<br>Defendant. | Case No. 2:26-cv-01031-JNW<br><br>**DEFENDANT MICROSOFT CORPORATION'S NOTICE OF SUPPLEMENTAL AUTHORITY** |

Pursuant to Civil Local Rule 7(n), Microsoft respectfully submits this Notice of Supplemental Authority to bring to the Court's attention a relevant judicial opinion published after the date of Microsoft's reply brief in support of its pending motion to dismiss, Dkt. 24.

On October 2, 2026, the United States District Court, Northern District of California, San Jose Division, granted the motion to dismiss in *Beaulier v. Roblox Corporation.*, No. 26-cv-02642-BLF, dismissing Beaulier's Section 1202(b) claims against the defendant in that case. A copy of the opinion is attached as Exhibit A.

Dated: October 5, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Mark S. Parris*

Mark S. Parris (WSBA No. 13870)
Deirdre Farrell (WSBA No. 61977)
401 Union Street, Suite 3300
Seattle, WA 98101
T: 206.839.4300
F: 206.839.4301
mparris@orrick.com
Deirdre.Farrell@orrick.com

Christopher Cariello (*pro hac vice*)
51 West 52nd Street
New York, NY 10019
T: 212.506.3778
ccariello@orrick.com

Annette Louise Hurst (*pro hac vice*)
Amanda H. Schwartz (*pro hac vice*)
405 Howard Street
San Francisco, CA 94105
T: 206.773.5000
ahurst@orrick.com
aschwartz@orrick.com

*Attorneys for Defendant Microsoft Corporation*

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AUSTIN BEAULIER,<br>Plaintiff,<br>v.<br>ROBLOX CORPORATION,<br>Defendant. | Case No. 26-cv-02642-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF Nos. 30, 38, 39] |

Austin Beaulier, on behalf of a putative class of digital artists, sued Roblox for violations of the Digital Millennium Copyright Act (DMCA).[1] 17 U.S.C. § 1202(b); ECF No. 1 (“Compl.”). Roblox now moves to dismiss. ECF Nos. 30 (“Mot.”), 38 (“Opp.”), 39 (“Reply”). The Court heard argument on September 16, 2026. ECF No. 45 (“Tr.”). For the following reasons, the motion to dismiss is GRANTED with leave to amend.

## I. BACKGROUND

Many artists upload their art to the internet. Creators of three-dimensional (“3D”) models are no exception. Platforms like Sketchfab function as online repositories for 3D artists to share their works with the world. Compl. ¶ 34. Austin Beaulier makes 3D models for a living. Compl. ¶ 118. He has published over four hundred original 3D models on Sketchfab. Compl. ¶¶ 116, 123.

When creators upload a 3D model to Sketchfab and make it freely available for download,

[1] The Court notes that Beaulier’s complaint in this case is substantially similar to (and advances the same two counts as) the complaint in *Beaulier v. Meta Platforms, Inc.*, 2026 WL 2521848 (N.D. Cal. Aug. 26, 2026). There, Judge Breyer recently dismissed both counts: the § 1202(b)(1) claim for want of intent, and the § 1202(b)(3) claim for want of distribution, with leave to amend. *See id.* at *3–5.

United States District Court
Northern District of California

they are required to select a "Creative Commons" license governing how that model may be used by others. Compl. ¶ 52. These licenses come in many forms. Some, for instance, require downstream users to give attribution to the original creator; others require users to refrain from commercial exploitation. Compl. ¶ 3.

Models uploaded to Sketchfab are also accompanied by information about the work, such as its title, author, and the operative license. Compl. ¶¶ 64–68. Starting in early 2023, Sketchfab also began to allow creators to designate models with a "NoAI" tag, which embeds an HTML meta tag in the model's webpage indicating that the work is disallowed for use in training artificial intelligence models. Compl. ¶¶ 51–63. Upon release of the NoAI feature, Beaulier manually applied the tag to each of his over 400 works on Sketchfab. Compl. ¶ 123. Beaulier alleges that the information accompanying his works—including the NoAI tag—constitutes "Copyright Management Information" ("CMI") under the DMCA. Compl. ¶ 60.

Training generative artificial intelligence ("GenAI") models requires data. To that end, researchers and technology companies use web crawlers to collect a myriad of 3D models from various sources, including Sketchfab. Compl. ¶¶ 75, 78. They then create large datasets by aggregating references[2] to the online repositories where those 3D models were originally published. Compl. ¶¶ 79–80, 85. These datasets are then used to train GenAI models that can generate new 3D outputs. Compl. ¶ 75. Objaverse-XL is one such dataset. It comprises over ten million 3D assets collected from publicly accessible repositories. Compl. ¶ 77. Beaulier alleges that he "located numerous works of his within" Objaverse-XL. Compl. ¶ 124. Objaverse-XL is alleged to preserve at least some CMI of the underlying works. *See* Compl. ¶ 110.

Roblox runs a large online gaming and game creation platform. Compl. ¶ 32. Users on the platform can program games for others to play and can play games programed by others. Compl. ¶ 32. Roblox also develops GenAI systems designed to generate 3D assets for use in its ecosystem. Compl. ¶ 84. In so doing, Beaulier alleges that Roblox used datasets like Objaverse-XL to "identify

[2] Akin to how an address book contains house addresses (and not houses), these datasets likewise store *references* to the 3D models (rather than the 3D models themselves).



United States District Court
Northern District of California

and obtain copies of 3D models from the source repositories where those works were originally distributed." Compl. ¶ 95.

Training GenAI "requires converting raw creative works" (like 3D models) into numerical inputs. Compl. ¶ 96. So after Roblox amalgamated training data using Objaverse-XL and the like, it allegedly ran these copies "through machine-learning preprocessing pipelines designed to convert raw 3D assets into training inputs suitable for generative AI systems." Compl. ¶ 95. It is during this preprocessing stage, Beaulier alleges, that Roblox "removed . . . the CMI that accompanied the works when originally distributed." Compl. ¶¶ 111, 101.

The complaint has two counts. Count I alleges that Roblox violated 17 U.S.C. § 1202(b)(1) of the DMCA by intentionally removing the CMI accompanying Beaulier's works when Roblox "preprocess[ed] those works for use in AI training pipelines." Compl. ¶ 146. Count II alleges that Roblox violated 17 U.S.C. § 1202(b)(3) of the DMCA by "distribut[ing] . . . CMI-stripped representations of [Beaulier's] works [in] the training datasets [Roblox] used to develop" its AI models. Compl. ¶ 162. Both counts allege that Roblox had knowledge (or reason to know) that the relevant conduct—removal for § 1202(b)(1) and distribution for § 1202(b)(3)—would induce, enable, facilitate, or conceal infringement of Beaulier's works. Compl. ¶¶ 151, 164.

Roblox moves to dismiss both counts under Rule 12(b)(6).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Dismissal of a complaint is appropriate under Rule 12(b)(6) "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). In evaluating a Rule 12(b)(6) motion, a court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Id.* To pass muster under Rule 12(b)(6), a complaint need not contain "detailed factual allegations" but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### B. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendment; (4) undue prejudice to the opposing party; or (5) futility of amendment *Id.* at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III. DISCUSSION

### A. Standing

Standing is a jurisdictional issue, so the Court addresses it first. To carry his burden, Beaulier must show (1) he suffered a "concrete," "particularized," and "actual or imminent" injury that (2) is "fairly traceable" to Roblox's "challenged action" and (3) would "likely" "be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). Beaulier must "clearly . . . allege facts demonstrating" each element. *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

#### 1. Injury in Fact

First, Roblox argues that Beaulier's alleged injuries are neither concrete nor particularized. Mot. at 16–17. In Roblox's view, Beaulier's injuries are not concrete because they boil down to "perfunctory allegation[s] of emotional distress" and speculative "fears" of future, unrealized harm. Mot. at 16 (first quoting *Manzanarez v. Madera Collection Servs.*, 722 F. Supp. 3d 1074, 1081 (E.D. Cal. 2024), then *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). Roblox further argues that Beaulier's injuries are not particularized because they are but "generalized grievances" directed at the 3D-asset licensing market broadly. *See* Mot. at 17. Beaulier counters that he pled concrete monetary injuries stemming from Roblox's "unauthorized use of [his] monetizable creative works." Opp. at 21.

Beaulier has alleged a concrete and particularized injury. Roblox's arguments to the contrary assume an uncharitably narrow reading of the complaint. Construing Beaulier's factual allegations

in the most favorable light—as this Court must—Beaulier alleges that Roblox's removal of CMI and subsequent commercial exploitation of the CMI-stripped works "impaired" his ability to exploit the property rights the DMCA endows upon him. *See* Opp. at 22. That is a concrete injury. *See Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025) ("The removal of CMI is [] a concrete injury for standing purposes."). And it is also sufficiently particularized. Far from merely airing grievances plaguing the market generally, Beaulier alleges that he "located numerous works of *his* within" Objaverse-XL and that Roblox "used these CMI-stripped representations of *Plaintiff's* works" to train its GenAI models. Compl. ¶¶ 124, 105 (emphases added).

**2. Traceability**

Second, Roblox argues that Beaulier's alleged injuries—"narrower access to opportunities, reduced visibility, and stagnant creative motivation"—all stem from "his works being collected into a publicly accessible database" rather than from anything Roblox did. Reply at 13; Mot. at 16. Beaulier counters that this is a strawman: the "basis for standing" is not Objaverse-XL's conduct, but Roblox's "later course of conduct, including" Roblox's use of "Objaverse-derived references to obtain copies of [Beaulier's] works" and removal of CMI during preprocessing. Opp. at 24. Roblox's conduct, Beaulier contends, "impaired [his] ability to control, license, monetize, obtain attribution for, and police unauthorized uses of his work." Reply at 22.

Beaulier has alleged an injury—monetary harm—that is sufficiently traceable to Roblox's conduct. To be sure, it may be true that some of Beaulier's alleged injuries are also partly attributable to other actors. *See* Mot. at 16. But an injury being also traceable to a third party's conduct does not foreclose those injuries being fairly traceable to Roblox's. Beaulier asserts the impairment of his property rights. *See Kadrey* 2025 WL 744032, at *1; Reply at 22. On the pleadings, that impairment appears at least partly attributable to Roblox's alleged removal and distribution of CMI.

* * *

Based on the foregoing, the Court is satisfied that Beaulier has met his pleading burden to establish standing.

United States District Court
Northern District of California

**B. Count I: Removal of Copyright Management Information**

Count I alleges that Roblox violated 17 U.S.C. § 1202(b)(1) of the DMCA by intentionally removing the CMI accompanying Beaulier's works when Roblox "preprocess[ed] those works for use in AI training pipelines." Compl. ¶ 146. Section 1202(b)(1) prohibits the unauthorized and intentional removal (or alteration) of CMI while "knowing, or . . . having reasonable grounds to know[] that [the removal or alteration] "will induce, enable, facilitate, or conceal" copyright infringement. To state a claim under § 1202(b)(1), a plaintiff must plausibly allege: "(1) the existence of CMI associated with the work; (2) the removal or alteration of that CMI; (3) that the removal or alteration . . . was intentional; and (4) that the defendant knew, or had reasonable grounds to know, that the removal [or alteration] would induce, enable, facilitate, or conceal infringement." *Beaulier v. Meta Platforms, Inc.*, 2026 WL 2521848, at *2 (N.D. Cal. Aug. 26, 2026) (citing *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018)).

In moving to dismiss, Roblox argues that Beaulier has not adequately pled elements two, three, and four. *See* Mot. at 7.

**1. Element 2: Removal of CMI**

Roblox contends that Beaulier merely pled that Roblox "fail[ed] to preserve CMI" when it converted the 3D models into machine-learning inputs, which is not actionable under § 1202(b)(1). *See* Mot. at 7–8 (collecting cases). The pleadings, the argument continues, also describe the separation of CMI as an "inherent consequence" of format conversion, belying the assertion that Roblox committed an affirmative act of removal (as opposed to mere passivity). Mot. at 8–9. Beaulier counters that Roblox's isolated attacks on the allegation that Roblox failed to preserve CMI ignores that the complaint also pleads that Roblox affirmatively removed CMI. *See* Opp. at 5. Beaulier also argues that the allegation that "CMI loss was a foreseeable and inherent consequence of Roblox's large AI ingestion process" does not mean "that no removal occurred." Opp. at 7.

Roblox is correct that Beaulier must plead more than failure to preserve.[3] That is because

[3] On September 8, 2026, Roblox filed a notice flagging the impending publication of *Doe 1 v. GitHub, Inc.*, No. 24-7700, 2026 WL 2728464 (9th Cir. Sept. 16, 2026). See ECF No. 41. During the hearing, Roblox informed the Court that the *GitHub* decision had been published five minutes before the hearing had started. Having reviewed the decision, the Court finds *GitHub* highly relevant

the mere failure to preserve CMI does not give rise to a legally cognizable § 1202(b)(1) claim. *See Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022) ("The DMCA prohibits removing or altering CMI; it does not prohibit merely omitting CMI from an infringing work."); *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024); *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314 (S.D.N.Y. 2025). To be sure, though cast in the disjunctive, the complaint also asserts that Roblox removed and "stripped" CMI from corresponding works. *See, e.g.*, Compl. ¶ 15 ("Roblox, in training its AI systems through ingestion of Objaverse-XL derived works, removed *and/or* failed to preserve CMI associated with those works . . . ." (emphasis added)). But "labels and conclusions" and "formulaic recitation[s]" of removal will not do. *Twombly*, 550 U.S. at 545. Rather, Beaulier must put forth enough "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Id.* at 555.

The key question, then, is whether the complaint pleads enough facts to support its allegations of removal (rather than demonstrating the mere occurrence of innocent conduct—i.e., the failure to preserve). The ultimate thrust of the complaint is that Roblox "removed" CMI when it "copied, converted, rendered, normalized, and otherwise processed the models through machine-learning preprocessing pipelines."[4] Compl. ¶ 87; *see also* Compl. ¶¶ 62, 101, 111, 145–46. These "preprocessing pipelines" are, the complaint alleges, "designed to convert raw 3D assets into training inputs suitable for generative AI systems." Compl. ¶ 95. Preprocessing "operations" include "format conversion, mesh normalization, rendering, voxelization, and related transformations." Compl. ¶ 145.

In the Court's view, the factual allegations amount to little more than conclusory assertions that (1) the works, prior to going into the "preprocessing pipeline," had CMI; and that (2) the works, after leaving the pipeline, did not. While the complaint identifies "operations" that preprocessing pipelines "typically include[]," *see* Compl. ¶ 98, the complaint describes these operations as

---

to the issue of removal—which is a required element of both the §§ 1202(b)(1) and 1202(b)(3) claims. Removal is, in other words, a gatekeeper to Beaulier's entire case.

[4] This theory of removal is commonly referred to as an "input" theory (in that the alleged removal occurs during the *pre*processing stage before data is used for training).



United States District Court
Northern District of California

effecting a "transformation." *See, e.g.*, Compl. ¶ 97 ("[T]his [preprocessing] process involves transforming raw 3D asset files into numerical or visual representations that can be used as training inputs."); *see also* Compl. ¶ 98–99, 145. These descriptions undermine the plausibility of Beaulier's assertions of removal and simultaneously buttress an alternative, innocent account: that Roblox passively failed to preserve CMI when it subjected 3D assets to its preprocessing pipelines. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 998–99 (9th Cir. 2014) ("All of the facts Plaintiffs have presented are consistent with both their theory of liability and this innocent alternative . . . .").

Beaulier's invocation of *Doe 1 v. GitHub, Inc.* is not convincing. 672 F. Supp. 3d 837, 855–56 (N.D. Cal. 2023). Barring the distinct factual posture—*GitHub*'s removal analysis concerned an output theory of removal, whereas here Beaulier alleges an input theory (at least with respect to removal)—the plaintiffs in *GitHub* pled sufficient facts to give rise to a "reasonable inference that Defendants intentionally designed the programs to remove CMI from any licensed code they reproduce as output." *Id.* at 858. Moreover, as Beaulier acknowledges, the plaintiffs in *GitHub* "had alleged the defendants trained their systems to ignore or remove the CMI that appeared in" the GenAI models' outputs. Opp. at 5. In other words, there was something special about the intermediary model in *GitHub*—it was *designed* to remove CMI—that distinguished it from uniform processes. The complaint here makes no analogous allegations—i.e., that Roblox designed its preprocessing pipeline to omit or remove CMI. To the contrary, the complaint merely enumerates a slew of garden variety machine learning preprocessing operations and alleges that their use separated CMI from their corresponding works. *See* Compl. ¶ 145.

To be sure, Beaulier need not "allege facts that tend to exclude the non-liability-generating possibility" altogether. *Contra* Reply at 4. All Beaulier needs to do is to provide more than an "explanation [that removal] is merely *possible* . . . ." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1105 (9th Cir. 2013) (original emphasis). But here, Beaulier has failed to allege enough factual support to "nudge[]" his claims of removal "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. As currently pled, use of the preprocessing tools Beaulier identifies only give rise to a plausible inference of passivity. Therefore, the Court finds that these factual allegations

are insufficient to plead that Roblox "removed" CMI. *Contra Beaulier v. Meta Platforms, Inc.*, WL 2521848, at *3 (N.D. Cal. Aug. 26, 2026).

The Court briefly addresses Roblox's two remaining arguments.

First, Roblox argues that the NoAI tag is not CMI to begin with. *See* Mot. at 9–10. Roblox does not argue that Beaulier's works were accompanied by no CMI at all.[5] Rather, Roblox argues that the NoAI tag in particular is not CMI. *See* Mot. at 9–10. Roblox backs that argument up with caselaw suggesting that information located too remotely from the work—à la copyright notices buried at the bottom of the page—are not CMI conveyed "in connection with" the work. *See* Mot. at 10 (collecting cases). The NoAI tag, Roblox contends, is not CMI because it exists only as an "HTML meta tag within the model's webpage." Mot. at 9 (quoting Compl. ¶ 55). Beaulier counters that (1) Roblox misreads the caselaw, the thrust of which only confirms the uncontroversial proposition that "information placed on, near, or directly adjacent to the work" counts as CMI; and that (2) the NoAI tag falls comfortably within that broader definition, especially where the intended audience of the tag is a web crawler, not a human. *See* Opp. at 8–11.

The Court finds that Beaulier has adequately pled that the NoAI tag qualifies as CMI. The DMCA defines CMI to include the "[t]erms and conditions for use of the work" conveyed "in connection with" a work. 17 U.S.C. § 1202(c)(6). Beaulier has adequately pled that the NoAI tag constitutes a term or condition "that the work may not be used in generative-AI datasets or training." Opp. at 10 (citing Compl. ¶¶ 55–60).

The remaining question is whether the tag, embedded in the webpage, is conveyed "in connection with" Beaulier's works. The Court finds that Beaulier adequately pleads as such. First, Beaulier alleges that, upon release of the NoAI tag, he manually applied the tag to his over 400 works on Sketchfab. *See* Compl. ¶ 123. The work-by-work nature of the tagging process buttresses the connections between each individual tag and the corresponding work. Second, the Court is persuaded by Beaulier's argument that the intended, likely, and actual audience of the alleged CMI

---

[5] Although Beaulier generally describes types of CMI commonly embedded in class members' works, *see* Compl. ¶¶ 66–68, Roblox is correct that the NoAI tag is the "primary example of purported CMI" attached to *Beaulier's* works "specifically identified in the Complaint." Mot. at 9.



United States District Court
Northern District of California

shapes whether information is of sufficient proximity to meet the "connection" threshold. *See* Opp. at 9–10. Here, taking the pleadings as true, the intended, likely, and actual audience of the NoAI tag is a web crawler. *See* Compl. ¶ 55 ("Th[e] [NoAI] tag functions as a machine-readable signal that can be detected by automated tools accessing the platform."). None of Roblox's cases appear to contemplate this factual posture, and hence do not, in the Court's view, suggest that the embedded nature of the NoAI tag precludes it from being conveyed "in connection with" Beaulier's works.

Second, Roblox argues that DMCA violations require that the pre- and post-removal forms of the work must be "identical" (excluding, that is, the CMI). *See* Mot. at 10. And here, the argument continues, it is not: the "before" is a 3D asset and the "after" is a "numerical or visual representation[]" of that asset. Mot. at 10. Beaulier counters that "numerous courts have rejected a rigid identicality rule." Opp. at 10. The Court briefly notes that the Ninth Circuit in *GitHub* appeared to reject the identicality rule Roblox urges this Court to adopt. *See supra* n.3; *GitHub*, 2026 WL 2728464, at *6 ("To the extent identicality is relevant, it is because one way to determine whether CMI has been removed from a copyrighted work is to compare the allegedly infringing copy with the original." (cleaned up)).

**2. Element 3: Intentional Removal**

But even if the complaint adequately alleges removal, it fails to sufficiently allege that said removal was intentional.

Roblox contends that Beaulier failed to plead intent because any loss of CMI was merely an "unintended side effect" of format conversion. Mot. at 10. Roblox urges the Court to adopt a rule that "a defendant acts intentionally only when it designs or uses a process targeted at removing CMI . . . ." Mot. at 8. Roblox further argues that uniform processes like format conversion that "treats CMI and non-CMI content identically—simply converting everything into numerical representations—and does not intentionally target CMI." Mot. at 11. Beaulier counters that the "automated" nature of format conversion is beside the point; Roblox has acted intentionally by "deliberately design[ing] or us[ing] a process that strips or separates CMI from works . . . ." Opp. at 12.

The Court is not convinced by Roblox's argument that intentional removal requires the use

or design of a process "*targeted* at removing CMI." Mot. at 8 (emphasis added); *see also id.* at 11. Roblox has not demonstrated that the use of a uniform process—or a process for which removal is a side effect—forecloses the possibility that a defendant also bore an intent to remove CMI. These circumstances may well undermine allegations of intent at the summary judgment stage. But they are not sufficient to defeat the case on the pleadings. Indeed, on this score, it is somewhat telling that the bulk of Roblox's caselaw on this issue are summary judgment decisions. *See* Opp. at 14.

That being said, pleadings that *merely* establish that a defendant employed a uniform process or a process in which removal is a side effect are insufficient to plead intentional removal and fail to "nudge[]" allegations of intent "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Logan v. Meta Platforms, Inc.*, 2023 WL 3668520 (N.D. Cal. May 24, 2023). Beaulier must plead something more.

The Court finds that Beaulier has fallen short of his pleading burden here. To be sure, Beaulier alleges that Roblox "knew[] . . . that the works referenced in Objaverse-XL" were accompanied by CMI but nevertheless "processed the models through machine-learning preprocessing pipelines designed to convert raw 3D assets into training inputs suitable for generative AI systems." Compl. ¶¶ 148, 95. The problem, however, is that the complaint also puts forth allegations that are at best in tension—and are at worst contradictory—with Beaulier's theory of intentional removal. For example, while Beaulier argues that "the removal of CMI here is not an unavoidable consequence; it is an avoidable design choice[,]" Opp. at 13, the complaint also casts removal as an "inherent consequence of using large-scale creative datasets to train" GenAI models. Compl. ¶ 103. As pled, CMI removal categorically besets all "us[es] [of] large-scale creative datasets" for GenAI training, which hardly makes removal an "avoidable design choice." *See also* Compl. ¶ 149 (pleading that "preprocessing pipelines" that that are "used to train generative AI systems" categorically "do not preserve" the CMI at issue in this case). Accordingly, even if Beaulier sufficiently pled the removal of CMI, he has not sufficiently pled that said removal was intentional.

### 3. Element 4: Double Scienter

Roblox argues that Beaulier failed to plead that Roblox knew or had reasonable grounds to

United States District Court
Northern District of California

know that its alleged removal would "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). To satisfy the double scienter requirement, the infringement need not have yet occurred, but the plaintiff must show that "future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Stevens*, 899 F.3d at 674. Plaintiffs must allege a "more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary." *Id.* at 675.

Roblox argues that Beaulier failed to identify any infringement. *See Harrington v. Pinterest*, Inc., 2021 WL 4033031, at *6 (N.D. Cal. Sept. 3, 2021) (dismissing § 1202(b) claim where plaintiff did "not allege any facts to show that [the defendant's conduct] induced, enabled, facilitated or concealed any particular act of infringement by anyone"). Hence, the argument goes, Roblox could not have induced, enabled, facilitated, or concealed an infringement. Mot. at 14. Beaulier counters that the complaint "alleges that removal of CMI enabled and concealed Roblox's own unauthorized copying and commercial use of the works." Opp. at 17. That is, Beaulier's theory is that Roblox infringed his copyrights by "exceed[ing] the scope of the license granted" to Roblox and "enabled and concealed" that infringement through its removal of CMI. *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018), *rev'd on other grounds*, 139 S. Ct. 873 (2019).

The Court finds that Beaulier has plausibly pled that Roblox's use of Beaulier's works for training its GenAI models constitutes infringement. Specifically, Beaulier alleges that his works were accompanied by terms and conditions like (1) the NoAI tag (which prohibits the works from being "used for generative AI data collection, dataset creation, or AI model training"); and (2) other "restrictions on commercial use." Compl. ¶¶ 54–55, 150; *see also* Compl. ¶ 116 ("At the time [Beaulier] published his models on Sketchfab, he conveyed his restrictions on their use with the CC-BY (attribution) Creative Commons license."). Roblox's alleged removal of these terms and conditions, the argument continues, enabled and concealed Roblox's subsequent unauthorized use of the CMI-stripped works to train Roblox's GenAI models. *See* Opp. at 18 (arguing that Roblox's "commercial AI-training use" was infringing). Commercial use constitutes infringement because it runs afoul of the scope of the licenses accompanying Beaulier's works. *See Oracle*, 879 F.3d at 954 ("[W]hen a licensee exceeds the scope of the license granted by the copyright holder, the licensee

is liable for infringement); Opp. at 17. These allegations are enough at the pleadings stage. *See Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 4808984, at *4–6 (N.D. Cal. Oct. 6, 2025).

Roblox's argument that its "mere internal use of training assets from which CMI was allegedly removed" does not give rise to an inference that a defendant knew or had reason to know that its conduct would "facilitate an infringement" is not convincing. Reply at 12. "Mere internal use" can still violate licensing terms. *See Oracle*, 879 F.3d at 954.

In sum, Beaulier's allegations are collectively sufficient to plead that Roblox knew or had reasonable grounds to know that its conduct would enable violations of the licensing terms accompanying Beaulier's works.

* * *

Because (1) none of the *Foman* factors are present; and (2) the parties have not had the opportunity to address the Ninth Circuit's decision in *Doe 1 v. GitHub* in their briefing, leave to amend is warranted. Count I is therefore DISMISSED WITH LEAVE TO AMEND.

### C. Count II: Distribution or Use of Works Knowing CMI Has Been Removed

Count II alleges that Roblox violated 17 U.S.C. § 1202(b)(3) of the DMCA by "distribut[ing] . . . CMI-stripped representations of [Beaulier's] works [in] the training datasets [Roblox] used to develop" its AI models. Compl. ¶ 162.

Section 1202(b)(3) prohibits the unauthorized "distribut[ion]" of copies of works "knowing that [CMI] has been removed or altered . . . ." To state a claim under § 1202(b)(3), a plaintiff must adequately plead: (1) the existence of CMI associated with the work; (2) that the defendant distributed the work (or copies thereof); (3) with knowledge that CMI had been removed or altered without authorization; and (4) while knowing, or having reasonable grounds to know, that the distribution would "induce, enable, facilitate, or conceal" infringement. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018).

Roblox argues that Beaulier has failed to adequately plead elements two, three, and four. *See* Mot. at 7.

#### 1. Element 2: Distribution

Roblox argues that Beaulier never alleges that Roblox distributed any CMI-stripped works



United States District Court
Northern District of California

(or copies thereof), much less that Roblox distributed Beaulier's works in particular. *See* Mot. at 12; Reply at 11. Internal use, Roblox continues, is not distribution. *See* Mot. at 13; *see also Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 780 (N.D. Cal. 2024) ("Under the plain language of the statute, liability requires distributing the original 'works' or 'copies of [the] works.'"). Beaulier counters that it pled that Roblox "distributed the CMI-stripped copies through [Roblox's] commercial AI platform." Opp. at 15.

The Court finds that Beaulier has not plausibly pled distribution. To be sure, internal use can constitute copyright infringement. *See supra* III.B.3. But internal use is not distribution. Rather, distribution requires a "sale or transfer of ownership extending beyond that of a mere public display." *The New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 318 (S.D.N.Y. 2025). Beaulier alleges that Roblox "distributed the CMI-stripped works through its revenue generating AI platform." Compl. ¶ 15. But that isolated, conclusory statement is little more than a "formulaic recitation" of the distribution element and thus falls short of Rule 12's pleading demands. *See Twombly*, 550 U.S. at 557. The Court also notes that this statement further requires an inferential leap that *Beaulier's* works—and not just those of putative class members—were distributed. But no facts in support of that inference are pled. Beaulier is not required to prove its case on the pleadings. But the complaint must "provide sufficient facts to support a claim." *Sinclair*, 61 F.4th at 678; *see also Iqbal*, 556 U.S. at 678. Here it does not.

**2. Element 3: Knowledge of Removal**

This element requires that Roblox knew or had reason to know that CMI had been removed or altered from the works at issue. Roblox does not argue that it lacked *knowledge* of any removal, but that there was no removal to begin with. *See* Mot. at 7–10. Accordingly, because the Court finds that Beaulier has not adequately pled removal, *see supra* III.B.2, Beaulier has also not adequately pled that Roblox had knowledge (or reasonable to know) of any removal.

**3. Element 4: Double Scienter**

Section 1202(b)(3) requires showing that Roblox knew or had reasonable grounds to know that its *distribution* would induce, enable, facilitate, or conceal infringement. Because Beaulier has failed to plead distribution, *see supra* III.C.1, it has likewise failed to plead that Roblox knew or had



United States District Court
Northern District of California

reason to know that said distribution would induce, enable, facilitate, or conceal infringement.

* * *

Because (1) none of the *Foman* factors are present; and (2) the parties have not had the opportunity to address the Ninth Circuit's decision in *Doe 1 v. GitHub* in their briefing, leave to amend is warranted. Count II is therefore DISMISSED WITH LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Roblox's motion to dismiss Count I for violation of 17 U.S.C. § 1202(b)(1) is GRANTED WITH LEAVE TO AMEND.

(2) Roblox's motion to dismiss Count II for violation of 17 U.S.C. § 1202(b)(3) is GRANTED WITH LEAVE TO AMEND.

Any amended complaint SHALL be filed within thirty (30) days of the date of this Order. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this Order will result in a dismissal of the deficient claims with prejudice. Leave to amend is limited to the defects addressed in this Order, and Plaintiffs may not add parties or claims without prior leave of the Court.

Dated: October 2, 2026

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California